Carl David **METLER**, Appellant,

v.

**STATE of Alaska**, Appellee.

**No. 3273.**

Supreme Court of Alaska.

July 28, 1978.

---

Dana Fabe, Barbara J. Miracle, Sue Ellen Tatter, Asst. Public Defenders, Larry Bunn, Legal Intern, Brian C. Shortell, Public Defender, Anchorage, and Robert Adelman, Anchorage, of counsel, for appellant.

David J. Walsh, David Shimek, Asst. Dist. Attys., Joseph D. Balfe, Dist. Atty., Anchorage and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

## OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

CONNOR, Justice.

On January 5, 1976, an extortion note was found at the home of Elmer Rasmuson, who is a major stockholder and former chairman of the board of the National Bank of Alaska. The typewritten note purported to be from a guerilla organization which threatened to kill Mr. and Mrs. Rasmuson unless $250,000 was paid to the organization. Payment was to be made in specified denominations as indicated on a handwritten card enclosed with the first extortion note. Later that evening, a second extortion note was delivered to the Rasmuson residence. It was accompanied by a throwing knife, presumably meant to give emphasis to the threat. A third extortion note was found crumpled up in the street in front of the Rasmusons' home.

The initial police investigation centered on two suspects, one of whom was Carl

David Metler, the appellant herein. Metler was a former employee of the National Bank of Alaska who had recently been discharged on suspicion of embezzlement. A local handwriting expert compared the handwritten portions of the first extortion note to Metler's handwritten employment application, which had been furnished to the police by the bank. The expert concluded that both documents had been written by the same person. On the employment application, Metler had stated that he was a recent high school graduate, that he could type, and that he had participated in track and cross-country running in high school.

Shortly after the first extortion note was delivered, the police discovered a set of footprints leading to and from the Rasmusons' front door. The police showed photographs of these prints to an employee of a local sporting goods store. The store employee identified the tracks as having been made by an Adidas running shoe, and informed the police that this type of shoe was worn by people who participated in cross-country running or track.

Police officers submitted affidavits in support of a search warrant to search Metler's home for a typewriter, typing paper, and Adidas shoes. A district court judge issued the search warrant. The police also secured a warrant for Metler's arrest.

Two police officers knocked at the front door of the Metler home and asked for David Metler. Metler's brother invited the officers into the living room. The police noticed a typewriter in plain view in the living room. When Metler came into the room, the police saw that he was wearing Adidas shoes.

One of the officers told Metler that they had arrest and search warrants. The officer then advised Metler of his *Miranda* rights. Metler spent five to ten minutes reading the search warrant before the police started to search his house. Metler then confessed to the crime and assisted the

police in making the search. Numerous items were seized and Metler was taken into custody.

Metler was indicted on January 14, 1976, for attempted extortion in violation of AS 11.20.345. Two police officers were the only witnesses to testify before the grand jury. They stated that Metler had confessed and that he had assisted in their search of his home. The officers also related hearsay statements of the Rasmusons and two handwriting experts, none of whom appeared personally before the grand jury.

Metler entered various pretrial motions, including a motion to suppress the evidence seized pursuant to the search warrant, a motion to suppress the confession, and a motion to dismiss the indictment. The superior court ruled that the arrest warrant was supported by probable cause and was, therefore, valid. However, the court found the search warrant to be insufficient on the ground that there was no probable cause to believe that the items listed in the search warrant would be found at Metler's house. The court held that the typewriter and Adidas shoes were validly seized under the "plain view" doctrine, but he suppressed the confession as fruit of the illegal search. Regarding the motion to dismiss the indictment, the superior court found that there was sufficient evidence apart from that illegally seized to support the indictment, and denied the motion.

Metler pleaded nolo contendere to the charge of attempted extortion and received a sentence of five years' probation. This appeal followed.

In this appeal Metler challenges the validity of the indictment.[1] Appellant contends that the indictment must be dismissed because it rested on wholly incompetent evidence, some of which was illegally obtained, and the rest consisting largely of inadmissible hearsay.

We need not reach the particular issue of whether, under Alaska law, illegally obtained evidence may be used before the grand

---

1. Challenges to the validity of the indictment are jurisdictional questions which are not waived by a plea of nolo contendere. *United Brotherhood v. United States*, 330 U.S. 395, 412

n. 26, 67 S.Ct. 775, 91 L.Ed. 973, 987 n. 26 (1947); 1 C. Wright, Federal Practice and Procedure: Criminal § 177, at 387 (1969).

jury,[2] because we find that the evidence complained of was legally obtained, and erroneously suppressed by the superior court. In addition, we find that any error in the use of hearsay evidence before the grand jury was harmless. Therefore, we affirm appellant's conviction.

■ It is appellant's position that we ought not consider whether the evidence complained of was in fact legally seized. He argues that our doing so would amount to an impermissible appeal by the state.[3] This is not, however, an appeal by the government. The state is merely responding to appellant's claim that the grand jury proceedings were tainted by the introduction of evidence which a superior court judge later found to have been illegally seized.[4] It is within our power to examine the circumstances surrounding the seizure of the evidence presented to the grand jury in order to determine whether that evidence has been legally obtained. *See Leahy v. United States*, 272 F.2d 487, 489 (9th Cir. 1959), *cert. denied* 364 U.S. 945, 81 S.Ct. 465, 5 L.Ed.2d 459 (1961).

We therefore turn to the question of whether the affidavits in support of the search warrants provided the district court judge with sufficient evidence to enable him to make an independent finding of probable cause for the issuance of the warrant.

■ That there were circumstances in this case which led the police to conclude

that Metler was the guilty party would not, without more, give rise to probable cause to search Metler's home. Here, however, there was more to the affidavits than a mere showing of probable cause for Metler's arrest.

Federal courts have upheld searches even though the nexus between the items to be seized and the place to be searched was based not on direct observation, as in the usual search and seizure case, but on other factors, including the type of crime, the nature of the items enumerated in the search warrant, the extent of the suspect's opportunity for concealment, and normal inferences as to where a criminal would be likely to hide the property sought. *See, e. g., United States v. Lucarz*, 430 F.2d 1051, 1055 (9th Cir. 1970); *Aron v. United States*, 382 F.2d 965, 972–73 (8th Cir. 1967); *Porter v. United States*, 335 F.2d 602, 605 (9th Cir. 1964), *cert. denied*, 379 U.S. 983, 85 S.Ct. 695, 13 L.Ed.2d 574 (1965). In the more recent case of *United States v. Bowers*, 534 F.2d 186 (9th Cir. 1976), *cert. denied*, 429 U.S. 942, 97 S.Ct. 360, 50 L.Ed.2d 311 (1976), the Ninth Circuit stated that

" '[t]he magistrate is not required to determine whether *in fact* the items to be searched for are located at the premises to be searched, but only whether there is *reasonable ground* to believe they are there.' " (citation omitted)

534 F.2d at 192, emphasis in the original.

■ In the instant case, the handwriting analysis gave the police a strong indication

---

**2.** *Cf. United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), which held that a grand jury witness could not refuse to answer questions on the ground that they were based on evidence obtained from an illegal search and seizure. *Calandra* also held that the use of grand jury questions based on illegally obtained evidence did not constitute a fresh and independent violation of the witness's fourth amendment rights.

**3.** AS 22.05.010(a) provides in pertinent part that

"[a]n appeal to the supreme court is a matter of right, except that the state shall have no right of appeal in criminal cases, except to test the sufficiency of the indictment . . .."

*See also* Appellate Rule 5.

**4.** Appellant concedes that under the authority of *State v. Browder*, 486 P.2d 925, 930–31 (Alaska 1971), the state may bring a petition for review in criminal cases where the issue sought to be reviewed is a non-final order or decision of the superior court. In the instant case, it is apparent to us that the state had no occasion to seek review of the superior court's suppression order. The court had ruled that the hearsay evidence presented to the grand jury was not objectionable and that there was, therefore, sufficient evidence apart from that which had been suppressed to sustain the indictment. In cases such as this, in which the superior court refuses to dismiss the indictment and the defendant pleads nolo contendere, the state has little motivation to seek review of an erroneous suppression order until the defendant appeals.

that Metler was the perpetrator. They had reason to believe that Metler would have had access to a typewriter and the running shoes. The nature of these items, and the normal inferences as to where a criminal would be likely to keep such property, could reasonably lead the district court judge to believe that they would be found at the suspect's home.

"[G]reat deference" should be given to the findings of the district court judge issuing the search warrant. *Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Further, "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684, 689 (1965); *Keller v. State*, 543 P.2d 1211, 1220 (Alaska 1975). Under the circumstances of the case at bar, and giving due weight to the preference accorded to the district court judge's findings, we think the warrant was valid. The superior court judge erred in suppressing the items seized pursuant to the search warrant. As the search warrant was valid, the fruits of the warrant, including the confession, constituted admissible evidence.

Appellant next contends that the trial court ought to have dismissed the indictment because hearsay evidence was presented to the grand jury with no compelling reason for its use. He also claims that the credibility of the hearsay informants was not established.

We note that there were insufficient "compelling reasons" [5] for the absence of all of the hearsay declarants from the grand jury proceedings. The grand jury was told that the Rasmusons were unavailable be-

cause they were out of the state and that undue prejudice to the defendant might result if the proceedings were delayed until their return. The prosecutor attempted to justify the absence of the local handwriting expert on the ground of expense. The Seattle examiner's absence was explained by expense and "interference with his busy schedule."

In *State v. Gieffels*, 554 P.2d 460, 465 (Alaska 1976), we held that "the mere expense of transportation for the absent witness is not a reason which we feel makes it necessary to use hearsay." In the instant case, there may have been other factors, not apparent from the record, justifying the absence of the Rasmusons and the Seattle examiner beyond the mere expense of transportation. If not, the admission of the statements of these hearsay declarants was error. Furthermore, the justification given for the absence of the local handwriting expert is insufficient under the *Gieffels* test. That he would have to be compensated for his time is not a compelling reason for the use of his hearsay declarations.

In *Taggard v. State*, 500 P.2d 238, 242–43 (Alaska 1972), we held that although hearsay evidence may be sufficient to support a grand jury indictment, it must meet a two-pronged test: the evidence must present a sufficiently detailed account of defendant's activity, and the hearsay declarant must be sufficiently reliable. The first prong of the *Taggard* test is not at issue in this appeal. The second aspect, however, merits some discussion.[6]

We are concerned about the use of the hearsay declarations of the two handwriting examiners. In *McKinnon v. State*, 526 P.2d 18, 27 (Alaska 1974), we held that the reliability of a laboratory technician could

5. Rule 6(r), Alaska R.Crim.P., provides, in pertinent part, that "[h]earsay evidence shall not be presented to the grand jury absent compelling justification for its introduction."

6. As to the Rasmusons, we do not perceive any reliability problem. Unlike hearsay declarants drawn from a criminal milieu, the Rasmusons were ordinary citizens and victims of an extortion attempt who were cooperating with the police out of concern for the public and for

their own safety. Further, their hearsay statements were verified by the two extortion notes, one of which was delivered to the Rasmuson residence while the police were on the premises. The reliability of such "citizen informants" need not be established prior to the admission of their hearsay declarations before the grand jury. *See Erickson v. State*, 507 P.2d 508, 517–18 (Alaska 1973).

be established by evidence of his professional status. In that case, the technician's report had been read to the grand jury. We noted that a laboratory technician has little motive to prevaricate and is presumptively qualified to perform chemical analyses competently. We also mentioned that the technician's presence would add little to the grand jury's deliberations, as the technician's written report contained the pertinent facts. 526 P.2d at 27.

In the instant case, however, no written reports were submitted to the grand jury and no background information was given on either of the two handwriting experts which would tend to establish their professional credibility. The only thing said about the first expert was that he was "a local examiner." The second was described merely as "a handwriting examiner in Seattle, Washington." Unlike the laboratory technician in the *McKinnon* case, nothing was said regarding the place of employment of either of the handwriting experts. While they no doubt had little motive to lie, they submitted no written reports which would show the grand jury how their conclusions were reached, and we see no basis for presuming that their comparisons were performed and reported accurately. We conclude that the reliability of the handwriting experts was not sufficiently established to meet the tests of *Taggard* and *McKinnon*.

However, given the circumstances of this case, these errors were harmless. The grand jury had before it the extortion notes, which provided concrete evidence that a crime had been attempted. In addition, the grand jury heard the direct testimony of the two investigating police officers, who related the fact that Metler had confessed to the crime. As we noted above, this confession was not the fruit of an illegal warrant, but was in fact valid and admissible. Given Metler's confession, we can fairly say that the hearsay statements com-

plained of did not appreciably affect the outcome of the grand jury's deliberations.[7]

AFFIRMED.

---

7. *See Love v. State*, 457 P.2d 622, 629–32 (Alaska 1969). *Cf. Webb v. State*, 527 P.2d 35, 36 (Alaska 1974), in which we did not reach the issue of whether hearsay testimony was improperly admitted to the grand jury because we found that there was adequate direct testimony to support the indictment, and that the hearsay testimony in question was either peripheral or cumulative to the direct testimony.