**Elam E. STUART, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–276.**

Court of Appeals of Alaska.

April 26, 1985.

---

Larry D. Card and Kris Cassidy, Anchorage, for appellant.

Michael S. McLaughlin, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Elam E. Stuart was tried and convicted of three counts of misconduct involving a controlled substance in the third degree, a class B felony. AS 11.71.030(a)(1). All three counts involved cocaine. Stuart received nonpresumptive sentences of four years on each count. The sentences were made consecutive to each other for a total sentence of twelve years, of which six years were suspended and Stuart was placed on probation for five years.

Stuart appeals, contending that the trial court erred in failing to suppress evidence obtained by certain search warrants and in failing to quash an arrest warrant. He also contends that his conviction on count V violates due process and equal protection. Finally, he contends that his sentence is excessive and was improperly imposed. We affirm his conviction but vacate his sentence and remand for resentencing.

I.

■ Stuart first argues that the trial court erred in failing to suppress the fruits of certain search warrants. He argues that the police officers executing the affidavits which resulted in the search warrants colored the facts to create probable cause by omitting information which would have created ambiguities regarding Stuart's possible participation in a series of drug transactions with Erwin Netzke. Specifically, Stuart argues that while the police had probable cause to believe that Erwin Netzke was engaged in the sale of cocaine, they were in doubt as to the identity of Netzke's supplier. Information supplied to the magistrate indicated that the supplier was connected with Alaska Guttering and Siding (AGS), a business owned by Stuart, as Netzke had gone to the AGS building before drug transfers had occurred. Other information indicated an even greater link with Stuart. On two occasions, someone in a vehicle registered to AGS and owned by Stuart had rendezvoused with Netzke in a Qwik Stop parking lot, six blocks from Stuart's residence, and on a third occasion Stuart had left his residence and gone to AGS at about the time Netzke was contacting someone at AGS in connection with obtaining drugs which were later provided to an undercover informant. Stuart concedes that a number of vehicles owned by him and used in conjunction with his business may have been used by Netzke's supplier in conjunction with

the drug transactions. Stuart nevertheless argues that the magistrate should have been made aware of the fact that other people, *i.e.*, his employees, had access to AGS's business premises and the vehicles in question, and that had the magistrate known of this, he might not have found probable cause to search the business premises and Stuart's home. We disagree. We find that the omissions Stuart complains of were immaterial and would not have affected a determination of probable cause. The trial court did not err in refusing to quash the search and arrest warrants on this basis. *See State v. Malkin*, 678 P.2d 1356 (Alaska App.1984).

■ Stuart next argues that the search warrants were improperly broad and premature. During oral argument Stuart conceded that these arguments were not made to the trial court; we therefore will not consider them. Alaska R.Crim.P. 12(b)(3) and 12(e) and 16(f)(3). *See Davis v. United States*, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973) (interpreting Federal Criminal Rule 12 and holding that except for jurisdictional errors, any issue covered by Rule 12, whether constitutional or not, which is not raised pretrial is forfeited unless the forfeiture is excused for good cause); *see also Moreau v. State*, 588 P.2d 275, 280 (Alaska 1978) (court will ordinarily not treat search and seizure issues as plain error); *Hohman v. State*, 669 P.2d 1316, 1321–22 and n. 4 (Alaska App.1983). Stuart does argue, however, that he did preserve a related issue; namely, that the information contained in the affidavits executed in support of the issuance of a search warrant did not establish a sufficient nexus between any illegal drug transactions in which Stuart was involved and his home and certain metal sheds within its curtilage. We have independently reviewed the record and have concluded that this issue is properly before us. We therefore proceed to resolve it. In *Snyder v. State*, 661 P.2d 638 (Alaska App.1983), we said:

> Probable cause to search requires sufficient information to permit the conclusion that criminal activity or evidence of crime will be found at the place to be searched. Put another way, there must be a "nexus" between the place to be searched, criminal activity, and the items sought. [Citation omitted.] Moreover, as this court stated in *State v. Witwer*, 642 P.2d [828] 831 [ (Alaska App.1982) ]:
>
> > Where, as here, the place to be searched is not the place at which the criminal activity was or is to be consummated, it is also necessary to have probable cause to believe, (1) that items which are the objects of the search are seizable by virtue of their connection with criminal activity, and (2) that the items will be found in the place to be searched. [Citations omitted.]
>
> In *Metler v. State*, 581 P.2d 669 (Alaska 1978), the supreme court indicated that, in determining whether there is a "nexus" between the place to be searched and the items sought, and in the absence of eyewitnesses who saw the items at the place to be searched, four factors must be considered: (1) the type of crime; (2) the nature of the items; (3) the extent of the suspect's opportunities for concealing the items; and (4) normal inferences as to whether [sic: where] a criminal would be likely to hide the items sought. *Id.* at 672.

661 P.2d at 645.

■ We find the *Metler* test satisfied. The crime was sale of cocaine. Given the nature and frequency of the transactions, it was reasonable to assume that Stuart was warehousing a substantial quantity of the drug; that he had substantial opportunity to conceal it either at his place of business or his home; and that he would be at least as likely to have concealed it at his home as at his business. The latter assumption is based on the two transactions in which Netzke's supplier, driving a Stuart vehicle, rendezvoused with Netzke at the Qwik Stop six blocks from Stuart's home and a substantial distance from his business premises, and on the transaction in which Stuart left his home shortly before arriving at the business at approximately the same

time Netzke arrived at the business and shortly before Netzke consummated a drug transaction. As the Alaska Supreme Court pointed out in *Metler:*

"[t]he magistrate is not required to determine whether *in fact* the items to be searched for are located at the premises to be searched, but only whether there is *reasonable ground* to believe they are there." (citation omitted)

581 P.2d at 672, *quoting United States v. Bowers,* 534 F.2d 186, 192 (9th Cir.), *cert. denied,* 429 U.S. 942, 97 S.Ct. 360, 50 L.Ed.2d 311 (1976).

 Further, great deference should be given to the findings of the trial judge issuing the search warrant. In doubtful or marginal cases, his determination should be upheld, given the preference for warrants. *United States v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684, 689 (1965); *Keller v. State,* 543 P.2d 1211, 1220 (Alaska 1975). The superior court judge hearing a suppression motion functions essentially as a reviewing court, evaluating the decision of the magistrate, and should not overturn the magistrate's decision unless the magistrate's conclusions are clearly erroneous. *See Metler v. State,* 581 P.2d at 672–73. We conclude that there was a sufficient nexus between Stuart's residence and the drug transactions in question to justify the magistrate in issuing a warrant authorizing a search of that residence.

## II.

 Stuart's next argument constitutes an attack on his conviction of count V of the indictment. He argues that he could have been charged with attempted delivery under the general attempt statute, AS 11.-31.100, rather than under the misconduct involving a controlled substance statute. Count V charged Stuart with unlawfully and knowingly delivering cocaine to the state's undercover agent on July 8, a class B felony under AS 11.71.030(a)(1), misconduct involving a controlled substance in the third degree. In fact, however, the cocaine was never delivered to the undercover agent, as both Stuart and Netzke were arrested before the transaction was completed. Stuart argues that at most he was guilty of an attempted delivery which could have been charged under the general attempt statute. Had he been so charged, he could only have been punished for a class C felony. AS 11.31.100(d)(3). Stuart therefore contends that the prosecutor had unlimited discretion whether to charge Stuart with a class B or a class C felony, so different punishments were possible for the same act. He contends that this denied him equal protection and due process guaranteed by the Alaska Constitution, art. 1, §§ 1 and 7. Stuart relies on *Bell v. State,* 598 P.2d 908, 909–14 (Alaska 1979), which discusses but does not adopt the rule of *State v. Pirkey,* 203 Or. 697, 281 P.2d 698 (1955) (en banc), and *Olsen v. Delmore,* 48 Wash.2d 545, 295 P.2d 324 (1956) (en banc). (Under *Pirkey/Olsen,* equal protection is violated when a statute prescribes different punishments for the same act, committed under the same circumstances by persons in like situations.) We reject Stuart's argument. Under Alaska law, delivery of cocaine is expressly defined to include an attempted delivery. AS 11.71–.030(a)(1), AS 11.71.900(6). The more specific statute controls and the general attempt statute, AS 11.31.100, is therefore not applicable to delivery of cocaine. *Cf.* AS 11.31.150 (person may not be charged under AS 11.31.100 if the substantive crime is defined to include an attempt). Since only one punishment is applicable to Stuart, there is no equal protection or due process violation in charging him with delivery on the basis of evidence of an attempt to deliver.

## III.

Stuart was convicted of two counts of delivery of cocaine to the state's undercover agent and one count of possession of cocaine with intent to deliver. Each of Stuart's convictions constituted a class B felony, punishable by a maximum term of ten years' imprisonment. AS 11.71.030(c). Presumptive terms of four and six years are prescribed for second and subsequent felony offenders. AS 12.55.125(d). Since

Stuart had no prior felony convictions, he was not subject to a presumptive term. Superior Court Judge Victor D. Carlson sentenced Stuart to four years on each count. These nonpresumptive terms were made consecutive to each other, resulting in a composite sentence of twelve years' imprisonment. Six of the twelve years were suspended on the condition that Stuart serve a five-year probationary period. Stuart appeals his sentence. He contends that consecutive sentences were inappropriate and that his total sentence is excessive.

### A.

■ Stuart first argues that two of his offenses involve the same crime and thus could not be punished by separate sentences, let alone consecutive sentences. *See Hunter v. State*, 590 P.2d 888, 903 (Alaska 1979); *Davenport v. State*, 543 P.2d 1204, 1208–10 (Alaska 1975). Stuart refers to the attempted delivery on July 8 and the possession with intent to deliver on July 8. Under the facts, we believe that separate convictions and sentences were appropriate. Stuart sold Netzke one ounce of cocaine for the state's undercover agent but had not actually delivered it. This gave rise to the attempted delivery charge. Separate and apart from this transaction, Stuart also had fifteen ounces of cocaine at his home available for sale to others. This gave rise to the possession with intent to deliver charge. These were clearly two different offenses with two different intents and different conduct and, consequently, there is no violation of *Hunter/Davenport*.

### B.

Stuart makes three other arguments. He contends first that his sentence was based on improper, insufficient, and inaccurate information; second, that the trial court failed to make a formal finding of serious danger to the public required by the *Mutschler/Lacquement* rule, *see Mutschler v. State*, 560 P.2d 377 (Alaska 1977); *Lacquement v. State*, 644 P.2d 856 (Alaska

App.1982); and, finally, that his sentence was disproportionately severe.

Stuart argues that he was a successful businessman independent of any drug dealing, that he served honorably in the military service, and that he had a good work history and a supportive family. On the other hand, the evidence showed that at the time of his arrest Stuart had about $67,000 in cash, fifteen ounces of cocaine estimated to be valued at $45,000, as well as weighing, refining, and packaging paraphernalia in his house. He made the actual sales and deliveries at places other than his home. These facts all suggest an ongoing, organized, and profitable criminal enterprise which supports Judge Carlson's finding that he was "the equivalent of a professional criminal."

Stuart's situation is virtually indistinguishable from Raymond Lausterer, whose case we recently considered. *See Lausterer v. State*, 693 P.2d 887 (Alaska App.1985). In *Lausterer*, we approved a sentence of six years with two years suspended which we characterized as a very severe sentence. We reasoned that Lausterer fell into the most serious category of drug dealers, those who are engaged in smuggling or sale of large quantities of narcotics or possession of large quantities for sale. *See Waters v. State*, 483 P.2d 199, 201 (Alaska 1971). In reaching this conclusion, we characterized eight ounces or more of cocaine as a large quantity. *Lausterer*, 693 P.2d at 891:

> We recognize that, while the quantity of cocaine in this case [a little over half a pound] may be deemed relatively large, transactions involving substantially larger quantities may not be uncommon. In this respect, it might be inaccurate to depict Lausterer as a "titan of the narcotics industry." *Waters v. State*, 483 P.2d at 201. In light of Lausterer's lack of prior criminal convictions, his good history of employment, and his favorable prospects for rehabilitation, we do not believe that the quantity of cocaine in this case is so exceptional that imposition of a sentence substantially exceeding the

second offender presumptive term of four years would be justified under *Austin v. State*, 627 P.2d 657 (Alaska App. 1981), at least in the absence of any additional aggravating circumstances. It should be recalled that the amount of drugs involved in an offense is only one of several factors relevant to sentencing in drug cases. *See Waters v. State*, 483 P.2d at 201. We nevertheless believe that the amount of cocaine involved here renders this case sufficiently aggravated to permit, without violating the principles of *Austin*, the imposition of an unsuspended term of four years, an amount equal to the second offense presumptive sentence for a class B felony. In addition, we conclude that the case is sufficiently serious to justify two years of suspended imprisonment, so that the suspended and unsuspended portions of the sentence total six years, a period equal to the presumptive sentence for a third or subsequent felony offender.

693 P.2d at 891–92.

 What we said of Lausterer is equally true of Stuart. Like Lausterer, Stuart possessed a large quantity of cocaine; but also like Lausterer, his lack of prior criminal convictions, his good history of employment, and his favorable prospects for rehabilitation militate against a sentence substantially exceeding the second offender presumptive term of four years. The only difference between Stuart's case and Lausterer's is that Stuart was convicted of three separate offenses. In the context of an ongoing drug business, we do not think this distinction sufficient to warrant additional time. In *Lausterer*, we made it clear that it was only the defendant's substantial involvement in the commercial sale of cocaine that warranted the sentence he received. In context, multiple charges serve only to validate the conclusion that the person making the sales is involved in the commercial distribution of cocaine and to establish the scope of the illegal enterprise.[1] We believe that the supreme court's admonition that in evaluating consecutive sentences one must look to the total sentence imposed is particularly applicable to drug offenses. *Cf. Neal v. State*, 628 P.2d 19, 21 (Alaska 1981); *Waters v. State*, 483 P.2d 199, 201 (Alaska 1971). Under the circumstances which establish the similarity between Stuart and Lausterer, we conclude that Judge Carlson would have been justified in imposing either consecutive sentences totaling no more than six years with two years suspended, or three separate sentences of six years with two years suspended to be served concurrently. On the facts of this case, any additional time would be clearly mistaken. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

The judgment of superior court is AFFIRMED. The sentence is VACATED and this case is REMANDED for resentencing.

---

1. When a person is engaged in an ongoing commercial drug business, and multiple convictions involve the same parties, the same type of drug, and a short period of time, we see little justification in imposing a greater sentence in those cases where the state elects to charge multiple counts than where it elects to proceed on a single count. In both cases, the evidence at sentencing will be essentially the same.