**STATE of Alaska, Appellant,**

v.

**Albert BIANCHI, Appellee.**

**No. A–2317.**

Court of Appeals of Alaska.

Sept. 9, 1988.

---

**3.** Our disposition of this issue makes it unnecessary to decide the other issues which Ervin raises.

Robert D. Bacon, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellant.

Myron Angstman and Cathleen Connolly, Bethel, and Walter Share, Anchorage, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Albert Bianchi was charged by a grand jury with one count of misconduct involving a controlled substance in the third degree (cocaine), AS 11.71.030(a)(1). The evidence against Bianchi was largely the product of a search of his residence, conducted pursuant to a search warrant. Bianchi successfully obtained invalidation of the warrant and the suppression of the evidence on the ground that the affidavit in support of the warrant was insufficient to establish the credibility of the informant or the accuracy of the information she provided. Bianchi then moved to have the indictment dismissed on the ground that there was insufficient evidence to establish commission of the offense. Bianchi reasoned that a grand jury may not consider evidence obtained through an invalid search warrant, and the fruits of the search warrant should therefore be disregarded. Consequently, there was insufficient remaining evidence to establish that he committed the charged offense. The trial court agreed and dismissed the indictment.[1] The state appeals. We reverse.

The affidavit in this case was executed by Alaska State Trooper Simon Brown on June 13, 1987. In the affidavit, Brown indicates that he received information that Genevieve A. Olson of Bethel was selling marijuana in the native village of Hooper Bay out of the John Olson, Jr., residence. Using a confidential informant, "The Grassman," controlled buys of illegal alcohol and marijuana were made from Genevieve Olson on June 12, 1987. Thereafter, the John Olson, Sr., residence was searched and additional marijuana found. The affidavit continues:

12. On June 12, 1987, at approximately 1330 hours, Genevieve (Genny) Olson was questioned, and she informed the State Troopers, she had received the marijuana from Albert Bianchi, her landlord.[2] She further stated he had given her the marijuana on credit and she was suppose[d] to pay for it when she returned back to Bethel, from Hooper Bay.

---

1. We stress that when Bianchi moved to dismiss the indictment subsequent to the granting of the suppression motion, the state opposed the motion solely on the ground that the search was not illegal; it did not argue that the evidence would be admissible before the grand jury regardless of the validity of the search. *See United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). Neither party has argued whether *Calandra* should apply in Alaska under the Alaska constitution and Alaska Criminal Rule 6(r). We do not decide that issue here.

 We have previously noted that the correct remedy for illegally seized evidence is suppression of the evidence, not dismissal of the indictment. *State v. Garcia,* 752 P.2d 478, 479 n. 1 (Alaska App.1988). Although the state has no right to appeal a trial court decision granting a

suppression motion, *id.; see also Kott v. State,* 678 P.2d 386, 390–91 (Alaska 1984), Bianchi has not challenged the state's right to appeal. Therefore we have addressed the merits of the case. *Garcia,* 752 P.2d at 479 n. 1.

2. The affidavit does not specifically state that Olson was arrested at this time. The parties are in agreement that the reference to June 12, 1987, is in error and should read June 13, 1987. Bianchi apparently concedes that, as a matter of fact, Olson was arrested at approximately 5:30 p.m. on June 12, 1987. She was held in custody until she was brought to Bethel on June 13, 1987, at approximately 1:00 p.m. Thus, her statements to the troopers occurred approximately twenty hours after her initial arrest. The state seems to concede this point.

That he gave her eight (8) bags of marijuana to take to Hooper Bay and sell for $100.00 each.

13. Genevieve (Genny) Olson stated Albert Bianchi informed her if she needed more marijuana to come back[;] he had some more, he could give her to sell.

14. Genevieve (Genny) Olson stated she has purchased marijuana and Cocaine from Albert Bianchi and [had] seen large amounts in his residence, located at 739 6th Avenue, Bethel, Alaska, which is in the Fourth Judicial District of Alaska.

15. Genevieve (Genny) Olson stated she has purchased cocaine from Albert Bianchi for $50.00 for a half-of a gram, and $100.00 for a gram. That her last purchase was about 30 days ago, at Bianchi's residence.

16. This Search Warrant is further based on information from Cpl. J.D. Abrant at the Bethel Police who told me that on May 11, 1987, John McGeary told Cpl. Abrant that he (McGeary) had consumed a large quantity of cocaine and that Albert Bianchi had provided McGeary the cocaine. McGeary required treatment at the Bethel Family Clinic.

17. On June 9, 1987, Cpl. Abrant contacted Steven Aluska, who had apparently jumped through a glass window at the Catholic Church in Bethel and was found to be in an unnatural mental state. Aluska told Cpl. Abrant that he (Aluska) had consumed cocaine which had been sold to him by Albert Bianchi.

## DISCUSSION

The first issue to be addressed concerns the scope of appellate review. In this case, the magistrate, Superior Court Judge Gail Roy Fraties, ruled that the affidavit was sufficient and issued the warrant. The trial judge, Superior Court Judge James R. Blair, disagreed, invalidated the warrant, and suppressed the evidence. Our past decisions are somewhat ambiguous regarding the proper standard of review when the trial court and magistrate disagree regarding probable cause. We have indicated that we will apply the "clearly erroneous" standard to factual determinations of the

trial court during a suppression proceeding, but we have noted:

[T]o the extent [the superior court's] ruling was premised on an interpretation of the adequacy of the evidence supporting the search warrant ..., our review must be tempered by the need to give great deference to [the magistrate's] original determination of probable cause. We must resolve doubtful or marginal questions concerning interpretation of this evidence in a manner that will validate the warrant and reflect the preference traditionally accorded to warrants.

*State v. Gutman,* 670 P.2d 1166, 1170–71 (Alaska App.1983). We have also stated that:

Where a magistrate issues a search warrant, we must give great deference to his decision and must resolve doubtful or marginal cases by upholding the warrant. This is so despite any contrary trial court decision on a motion to suppress. In reviewing search warrants issued by magistrates, the trial court performs a reviewing function essentially identical to ours. Consequently, [the defendant] is in error when he contends (1) that [the trial judge's] determination should be evaluated under the "clearly erroneous" standard; and, (2) because he has prevailed in the trial court the evidence must be viewed in the light most favorable to him. [The evidence must be viewed] in the light most favorable to ... the party that prevailed before the magistrate[.]

*State v. Conway,* 711 P.2d 555, 557 (Alaska App.1985) (citations omitted).

 We believe any confusion is dispelled if we recognize that trial judges may perform different functions in connection with suppression motions depending upon the basis for the motion. When a trial court is asked to suppress the fruits of a warrantless search, it must review the record and make factual findings. In such a case, the trial court's factual findings will be upheld unless "clearly erroneous." By the same token, when a defendant challenges the validity of statements in an affidavit on the ground that they are inaccu-

rate, the trial court must make findings of fact which will be reviewed under the "clearly erroneous" test. *See, e.g., State v. Malkin*, 722 P.2d 943, 946–48 (Alaska 1986) (establishing standards to be followed where the factual allegations in an affidavit for search warrant are disputed).

■ In contrast, when the test is the "sufficiency" of the allegations of fact in the affidavit for a search warrant, the primary protection of the right to privacy rests with the magistrate, and he or she has broad discretion in determining whether or not to issue a warrant. *See, e.g., Malkin*, 722 P.2d at 947 n. 9 (quoting *Franks v. Delaware*, 438 U.S. 154, 169–70, 98 S.Ct. 2674, 2683–84, 57 L.Ed.2d 667 (1978)). This discretion, of course, is not unlimited. Under Alaska law, it is circumscribed by certain rules that must be applied in interpreting the affidavit and determining its sufficiency. Nevertheless, the proper test to be applied is the abuse of discretion test.

■ In determining whether a magistrate has abused his or her discretion in issuing a search warrant, we are guided by the Alaska Supreme Court's decision in *State v. Jones*, 706 P.2d 317 (Alaska 1985). In *Jones*, the supreme court reaffirmed the two-part *Aguilar/Spinelli* test. *See Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). A magistrate cannot rely on mere conclusory statements by the affiant. He or she must be supplied with sufficient information to independently evaluate (1) the basis for the informant's knowledge, and (2) the basis for determining that the informant is credible or that the information furnished is accurate. *Jones*, 706 P.2d at 321–22. The supreme court stressed, however, that while the two-prong test provides a structure for probable cause inquiries, it is not to be rigidly applied. Rather, it requires a careful assessment of the unique facts of the particular case. *Id.* at 324. We have applied this test to fact situations similar to Bianchi's in a number of cases. *See, e.g., Elerson v. State*, 732 P.2d 192, 193–95

(Alaska App.1987); *Clark v. State*, 704 P.2d 799, 803–04 (Alaska App.1985); *Morrow v. State*, 704 P.2d 226, 228–30 (Alaska App.1985); *Jones v. State*, 681 P.2d 364 (Alaska App.1984), *aff'd*, 706 P.2d 317 (Alaska 1985).

■ In this case, Genevieve Olson was disclosed as the informant against Bianchi. She mentioned him by name and was reported as having told the trooper that she dealt directly with Bianchi and received marijuana from him on credit. She also was reported to have told the trooper that she observed large quantities of cocaine and marijuana at Bianchi's residence. Finally, she gave a fairly detailed report regarding her marijuana transactions, and this report was verified by the confidential informant's success in purchasing marijuana from her. Under the circumstances, the first prong of the *Aguilar/Spinelli* test is clearly met.

The controversy in this case turns on the second prong of the test. There is no suggestion that Olson had provided accurate information to the troopers in the past. Nor is it suggested that her statements were verified by independent corroborative evidence established through surveillance of Bianchi, indicating that his actions were consistent with drug dealing. The affidavit does mention alleged allegations against Bianchi by John McGeary and Steven Aluska, which will be discussed later.

■ In the absence of a history of providing verified information, an informant's statements can be verified by recourse to the circumstances under which they are made. For example, a magistrate may find an informant's statements to be credible where they are against the informant's "penal interests." *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); *Elerson*, 732 P.2d at 194; *Clark*, 704 P.2d at 804–05; *Morrow*, 704 P.2d at 229; 1 W. LaFave, *Search and Seizure* § 3.3(C) (1987 and Supp.1988). Here, Olson made statements against her interests. She admitted to selling marijuana to the confidential informant and her statements were corroborated by indepen-

dent evidence of the transaction, as well as the search of the residence out of which she had been operating. It is also clear that Olson's statements against her own penal interests were closely related to criminal activity for which probable cause to arrest or search was being established because she was, in fact, identifying her source.

It is important in this context to stress that when contacted by the troopers, Olson did not supply a list of names of people from whom she had acquired contraband on prior occasions. Such a generalized and unfocused set of allegations might well be nothing more than a series of falsehoods if the informant is simply relating rumors that she had heard in the community, and relying on the law of averages for the hope that one or more of the leads she gives will pan out. Rather, Olson named but one source and gave specific information regarding her dealings with that source.[3] *See* 1 W. LaFave, *supra* § 3.3(C) at 650–51. Furthermore, we believe the following comment by LaFave is particularly apt:

> It *can* be said, however, that one who knows the police are already in a position to charge him with a serious crime will not lightly undertake to divert the police down blind alleys. Thus, where the circumstances fairly suggest that the informant "well knew that any discrepancies in his story might go hard with him," that is a reason for finding the information reliable.

*Id.* at 649 (emphasis in original).

Judge Blair did not reject this analysis out of hand, and in fact indicated that he might have been prepared to uphold the warrant under *Aguilar/Spinelli* but for his reading of *Jones*. He reasoned that

there was nothing in the affidavit that expressly indicated whether or not Olson had "made a deal" with the police. In his view, this omission was fatal to the affidavit.

■ Bianchi concedes that our decision in *Morrow* is inconsistent with this view, since there was nothing in *Morrow* to indicate whether or not the informant had or had not "made a deal." Bianchi argues, however, that *Morrow* was decided before *Jones* and therefore is unpersuasive. We are satisfied that Judge Blair and Bianchi have misread *Jones*. The court in *Jones* was not altering prior Alaska law, it was reaffirming it. There is nothing in *Jones* to suggest that the court wished to depart in any significant way from *Aguilar/Spinelli*. The comments regarding use of a declaration against penal interest as validation of information in an affidavit was case specific. The court noted that the informant in that case did not necessarily make statements that could incriminate him. It is important to stress that the informant in Jones was identified only by initials and that there was nothing in the record to explain how he came into contact with the police. In contrast, the affidavit in this case makes it clear that Olson was rumored to be a drug dealer and was in fact "caught in the act." Furthermore, reading the affidavit reasonably, it appears that Olson did not have a continuing relationship with the police wherein she had provided information in return for past favors. We therefore conclude that the trial court erred to the extent that it concluded that a disaffirmance of a "deal" was a condition prerequisite to validate an affidavit.[4]

Bianchi has offered a number of alternate grounds which he contends justify up-

---

**3.** Affidavits must be read in a common sense manner. The affidavit indicates that Olson named Bianchi alone. In the absence of some evidence to the contrary, the magistrate could reasonably conclude that Bianchi was the only source she identified. It is unreasonable to expect that lay people preparing affidavits will be able to anticipate and answer every objection and every question that might thereafter occur to diligent counsel seeking suppression of evi-

dence thereafter obtained. When significant information is recklessly withheld from the magistrate, a remedy may be available. *Malkin*, 722 P.2d at 946.

**4.** A significant "deal," if undisclosed to the magistrate, might warrant relief. *See Malkin*, 722 P.2d at 946–47. There is nothing in the record suggesting that a deal in fact existed.

holding of the trial court's ruling. Having examined the briefs, we are satisfied that these alternate grounds all require fact finding by the trial court. We therefore REMAND this case to the trial court to rule upon Bianchi's alternate grounds for suppressing the fruits of the warrant.