**David BRUCE, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 2114.**

Supreme Court of Alaska.

June 27, 1980.

---

Frank D. Rothschild, Asst. Public Defender, Anchorage, and Richard G. Lindsley, Asst. Public Defender, Juneau, Walter Share, Asst. Public Defender, and Brian C. Shortell, Public Defender, Anchorage, for appellant.

Michael J. Stark, Asst. Dist. Atty., Juneau, Larry R. Weeks, Dist. Atty., Anchorage, and Patrick J. Gullufsen, Dist. Atty., and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

## OPINION

CONNOR, Justice.

The sole issue in this appeal is whether the defendant established police entrapment by a preponderance of the evidence.

David Bruce was a mechanic at a Juneau service station. He was a heavy user of cocaine. Towards the end of February, 1978, he began to feel tired and run down on the job, and his joints began to ache. He went to a doctor and was given medication for his pain.

At about the same time, Bruce had become acquainted with a man he knew as Michael O'Day, who was in reality Gene Reedy, an undercover police officer. Reedy was a customer of the service station at which Bruce worked. Reedy struck up casual conversations with Bruce during his business visits to the service station. Reedy visited the station approximately six times between mid-February and mid-March. The conversations usually concerned motorcycles, an interest shared by both men.

During one of Reedy's early visits, he brought up the subject of cocaine, telling Bruce that the drug seemed hard to find in Juneau. Bruce indicated that he had access to cocaine, having used seventy-eight hundred dollars worth of it in one year. Reedy asked him if he knew where he could get some. Bruce put Reedy off, telling him that he did not know of any at the time. During subsequent visits, Reedy continued to question Bruce about getting some cocaine, but Bruce continued to be noncommittal.

Around March 15, 1978, Bruce realized that he had contacted hepatitis from his cocaine injections. He decided to end his use of the drug. When his deteriorating physical condition caused him to quit work at this time, Bruce's contacts with Reedy ceased.

On April 8, 1978, Reedy and Bruce met by change in a local store. Reedy again asked Bruce if he could find some cocaine, and this time Bruce said he could. Bruce had a friend, Arvin Bell, who had just mentioned to him a day or two earlier that he was trying to unload some "real garbagey stuff," and Bruce hoped to acquire a bit of the drug himself for his efforts in connecting Bell and Reedy. Bruce informed Reedy of the price and arranged a meeting for later that afternoon at his brother-in-law's house.

Bruce then contacted Bell, who agreed to meet the proposed buyer that afternoon. Bell did not have a car, so Bruce drove him to the supplier, who was unavailable at that time. Bruce and Bell drove back to the brother-in-law's place, where Reedy was waiting, and the three agreed to try once more than evening to complete the sale. At 8:30 p. m. they met again, but Bell's supplier was still unavailable. Bell suggested that one more attempt be made at 10:30 or 11:00 p. m., but Reedy did not return that night.

The next day, Reedy again met Bruce by chance, and Bruce suggested a meeting that afternoon, as he was sure that Bell had the drug by now. Reedy agreed. Bruce contacted Bell, who soon arrived with his supply. The sale was made, and Reedy left with his cocaine.

A few weeks later Bruce was arrested and charged with distribution of a narcotic drug, in violation of AS 17.10.010. After a hearing at which the entrapment defense was rejected, Bruce entered a plea of *nolo contendere*, reserving for appeal the question of whether entrapment had occurred.[1]

■■■ In determining whether entrapment has occurred, the trial court must focus upon the "particular conduct of the police in the case presented." *Pascu v. State*, 577 P.2d 1064, 1067 (Alaska 1978), quoting *Grossman v. State*, 457 P.2d 226 (Alaska 1969). Any unreasonable or unconscionable efforts on the part of the police to induce one to commit a crime so that he may be arrested and prosecuted for the offense are prohibited. 577 P.2d at 1067. The question with respect to the defense of entrapment is really whether the conduct of the police "falls below an acceptable standard for the fair and honorable administration of justice." *Id.*

In the present case the defendant argues that Reedy's efforts to induce his participation in the cocaine transaction were unreasonable under the circumstances. We disagree and affirm the opinion of the superior court.

■■■ Reedy did not have a close personal friendship with Bruce which he could have exploited for the purpose of inducing the defendant's participation. Nor did the undercover officer make repeated appeals to the defendant's sense of obligation or sympathy. Reedy never explicitly offered the defendant a share of the cocaine or any inordinate financial gain as an inducement for his participation.[2] While Reedy was aware that Bruce was out of work and sick with hepatitis at the time of the sale, these facts alone are insufficient to make Reedy's solicitations unreasonable or unconscionable.[3] That Bruce might not have been an

---

1. Pursuant to our rulings in *Cooksey v. State*, 524 P.2d 1251, 1255 (Alaska 1974) and *Oveson v. Municipality of Anchorage*, 574 P.2d 801, n.4 (Alaska 1978), all parties involved clearly stipulated, with the trial court's approval, that our resolution of the entrapment issue on appeal would be dispositive of the entire case.

2. We do not imply that the offer of a share of cocaine under the circumstances here involved would be an inordinate inducement.

3. The trial court's evaluation of the relationship between the defendant and Officer Reedy (contained in its ruling denying Bruce's motion to dismiss, based on the alleged entrapment) is notable in this regard:

habitual drug dealer is also inconclusive, since "situational offenders" who yield to reasonable inducements on a single occasion are not necessarily entrapped. *Grossman v. State*, 457 P.2d 226, 229 n.9 (Alaska 1969).

AFFIRMED.

"I guess I really find that Mr. Bruce used Officer Reedy as much or more than Officer Reedy used Mr. Bruce, because he had a need and he wanted something to gain from the situation. The decision-making process he went through, I have the feeling that this took place basically *before* he ever got in touch with—or Officer Reedy got in touch with him. He was really down and was looking for some kind of way to get the cocaine, didn't have the money, didn't have the job and *by happenstance the opportunity presented itself.*
*I don't find the kind of conduct by the officer that's going to depart or seriously affect the decision-making process of Mr. Bruce.* Essentially Officer Reedy gave him the opportunity and that's even believing the testimony of Mr. Bruce, that he was going to get his share of it. . . . *[T]he motive power in this situation was essentially that of Mr. Bruce."* [emphasis added]