Nathan McREYNOLDS, Appellant,

v.

STATE of Alaska, Appellee.

No. A–924.

Court of Appeals of Alaska.

June 26, 1987.

---

Barbara Brink and Sen K. Tan, Asst. Public Defenders, and Dana Fabe, Public Defender, Anchorage, for appellant.

James V. Gould, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Harold M. Brown, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., COATS and SINGLETON, JJ.

OPINION

BRYNER, Chief Judge.

Nathan McReynolds was convicted after a jury trial of one count of misconduct involving a controlled substance in the second degree (sale of heroin), in violation of AS 11.71.020. Superior Court Judge Joan M. Katz sentenced McReynolds to an adjusted presumptive term of five years with one year suspended. McReynolds appeals, contending that the trial court erred in rejecting his defense of entrapment. McReynolds also contends that his sentence is excessive. We affirm the conviction but reverse the sentence.

McReynolds was initially charged by indictment with one count of second-degree misconduct involving a controlled substance and one count of third-degree misconduct involving a controlled substance (sale of cocaine). The third-degree misconduct charge was later dismissed. With respect to the second-degree misconduct charge, the indictment alleged that, on July 10, 1984, McReynolds sold a quantity of heroin to Officer Wilbur E. Hooks. Hooks was an undercover police officer at the time.

Prior to trial, McReynolds moved for a judgment of acquittal on grounds of entrapment. At the entrapment hearing, McReynolds denied selling or delivering heroin to Hooks, but acknowledged some participation in a transaction involving Jerry Raygor, a friend who, unbeknownst to McReynolds, was working as an undercover informant for Hooks. According to McReynolds, McReynolds was seated with one James Keel at a cafe in Anchorage, when Raygor approached their table and made arrangements with Keel to purchase some heroin for $100. Raygor did not have the cash but told Keel he could produce it later in the day. Raygor asked McReynolds "to stand pat" for him by, in effect, guaranteeing that the money would be paid to Keel by the end of the day. McReynolds agreed to vouch for Raygor because Raygor was a friend. McReynolds believed

Raygor to be a heroin addict, and Raygor looked like he was undergoing withdrawal. Raygor told McReynolds that he was sick. After McReynolds agreed "to stand pat," Raygor and Keel left the table, presumably so that Keel could deliver the heroin to Raygor. McReynolds claimed that he was not present when the drugs changed hands. Later that day, Raygor stopped by with Hooks and told McReynolds he had the money. Hooks gave $100 to McReynolds for payment to Keel.

McReynolds was the only witness to testify at the entrapment hearing, and his account of the transaction stood uncontradicted. Judge Katz nevertheless rejected McReynolds' entrapment defense, stating:

I did not find any kind of pleas of desperation, I did not find any evidence that Jerry showed signs of such acute withdrawal or pain that they would—would justify, based on the objective test of *Pascu*, the defendant entering into any criminal activity in regard to drugs. There was certainly no inordinate sums of money offered. There was no repeated inducement or pleas of sympathy. There were no—there was no testimony in regard to the defendant having any problem of his own in terms of needs for money, or needs for drugs himself. That did not play any part in the testimony given by the defendant in this case. And I found no unreasonable or unconscionable efforts on the part of the police to induce the commission of a crime in regard to [the sale of heroin charge].

On appeal, McReynolds challenges the trial court's rejection of his entrapment defense.

Under Alaska law, the accused must establish the affirmative defense of entrapment by a preponderance of the evidence. AS 11.81.450; *Coffey v. State*, 585 P.2d 514, 521 (Alaska 1978). Entrapment occurs where there are "unreasonable or unconscionable efforts on the part of the police to induce one to commit a crime so that he may be arrested and prosecuted for the offense." *Pascu v. State*, 577 P.2d 1064, 1067 (Alaska 1978). *See also Grossman v. State*, 457 P.2d 226 (Alaska 1969). The primary question is whether the conduct of

the police falls below an acceptable standard for the fair and honorable administration of justice. *Bruce v. State,* 612 P.2d 1012, 1014 (Alaska 1980). In entrapment cases, as in other situations, the trial court's factual determinations are entitled to deference and are subject to reversal only when clearly erroneous. *Bruce v. State,* 612 P.2d at 1015; *Blakesley v. State,* 715 P.2d 269, 271 (Alaska App.1986).

■ In the present case, our review of the record convinces us that Judge Katz's factual findings are not clearly erroneous and must be upheld. Judge Katz applied the correct rule of law to the facts as she found them. We hold that McReynolds has failed to establish his entrapment claim by a preponderance of the evidence.[1]

Although we have held that McReynolds' testimony at the entrapment hearing was insufficient to support his claim of entrapment, we do not mean to intimate that his account of the transaction, if accepted, would necessarily have supported a conviction for sale of heroin. Since, in his own version, McReynolds characterized his role as that of an agent for Raygor, the purchaser, rather than for Keel, the seller, it is unclear whether he could have been convicted as charged in the indictment. *See, e.g., Gordon v. State,* 533 P.2d 25, 30 & n. 14 (Alaska 1975); *Howard v. State,* 496 P.2d 657, 660 (Alaska 1972). McReynolds' ultimate guilt or innocence, however, was not at issue during the entrapment hearing; that issue was for the jury's consideration at trial. At trial, McReynolds' version of the events was not uncontested as it had been at the entrapment hearing. Testimony presented by the state supported the theory that McReynolds had sold heroin directly to Hooks, and it was on that basis that McReynolds was ultimately convicted.

■ McReynolds next challenges his sentence. He argues initially that the sentencing court erred in rejecting his contention that the mitigating factor specified in AS 12.55.155(d)(2) was applicable to his case: that "the defendant, although an accomplice, played only a minor role in the commission of the offense." On its face, this mitigating factor can apply only to a defendant who is convicted of playing a minor role "as an accomplice." It is inapplicable to defendants convicted as principals. Here, there was ample evidence to support McReynolds' conviction as a principal for selling directly to Hooks. Rejection of the mitigating factor was not error.

■ The second contested mitigating factor is whether "the defendant committed the offense under some degree of duress, coercion, threat, or compulsion...." AS 12.55.155(d)(3). Judge Katz rejected this factor based primarily on her conclusion that McReynolds' testimony at the suppression hearing was not credible. It is well settled that a trial court's rulings on matters of credibility are entitled to great deference. *See, e.g., Troyer v. State,* 614 P.2d 313, 318 (Alaska 1980). We find no clear error. *Walsh v. State,* 677 P.2d 912, 916 (Alaska App.1984).

■ McReynolds' final claim is that his sentence is excessive. The offense in this case is a class A felony, punishable by a maximum term of twenty years' imprisonment. As a first felony offender, McReynolds was subject to the five-year presumptive term. Prior to imposing sentence, Judge Katz accepted two of McReynolds' proposed mitigating factors: first, that the offense involved a small quantity of drugs, AS 12.55.155(d)(14), and, second, that his conduct was among the least serious within the definition of the offense, AS 12.55.-

---

1. In his reply brief, McReynolds claims for the first time that Raygor's conduct amounted to "conduit entrapment" under *United States v. Bueno,* 447 F.2d 903 (5th Cir.1971). There appears to be little merit to this claim. Nothing in the record supports the conclusion that Keel was a government agent or that Raygor had made prior arrangements with Keel to purchase heroin. Given the state of the record, this simply does not appear to be a case like *Bueno,* where the government in effect purchased contraband from itself using the defendant as the middleman. In any event, we need not conclusively decide the issue. McReynolds did not raise the *Bueno* theory below, and it was neither considered nor ruled on by the trial court. On appeal, it has been argued for the first time in the reply brief. We hold that the issue has not been adequately preserved, and, on this basis, we decline to rule on it.

155(d)(9). Based on these factors, the judge imposed an adjusted presumptive term of five years with one year suspended.

McReynolds argues that Judge Katz should have imposed a sentence of no more than two and one-half years to serve. Given the mitigating factors that McReynolds established, Judge Katz had discretion to impose an adjusted sentence of between five and two and one-half years' imprisonment. The lowest sentence authorized for the offense without referral to the three-judge panel was a term of two and one-half years. *See* AS 12.55.155(b).

In deciding the amount by which to adjust the five-year presumptive term in McReynolds' case, Judge Katz properly considered the sentencing factors set out in *State v. Chaney*, 477 P.2d 441, 443–44 (Alaska 1970). *See Juneby v. State*, 641 P.2d 823, 835 & n. 21 (Alaska App.1982), *modified on other grounds*, 665 P.2d 30 (Alaska App.1983). The judge declined to reduce the sentence to the permissible minimum of two and one-half years, concluding that the goals of general deterrence and community condemnation required a longer period of incarceration. Accordingly, Judge Katz elected to impose an adjusted sentence of five years with one year suspended.

Although Judge Katz's sentencing decision was within the statutorily authorized range of sentencing discretion, on appeal we must independently review the entire sentencing record and decide, based on that review, whether the sentence is clearly mistaken. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974). In the present case, our review of the sentencing record convinces us that the unusual circumstances of McReynolds' case render the sentence imposed below clearly mistaken.

It is undisputed that McReynolds has never previously been convicted of any criminal offenses and has no record of misconduct as a minor. There seems little

question that, if our review were restricted to existing case law, a sentence of five years with one year suspended would be excessive for a first felony offender convicted of a casual sale of only a small quantity of heroin. In *Jones v. State*, 510 P.2d 1070, 1071 (Alaska 1973), for example, the Alaska Supreme Court reversed as excessive a sentence of eight years with four years suspended for the sale of a small quantity of heroin by a first offender who acted as a middleman. In two other cases, the supreme court approved of sentences involving four years of unsuspended time to serve for larger sales involving offenders with prior criminal records. *See Huff v. State*, 568 P.2d 1014 (Alaska 1977); *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

However, the precedential value of these sentencing decisions has been diminished by the enactment in 1982 of revised drug legislation. Formerly punishable by a maximum of ten years' imprisonment, sale of heroin is now a class A felony, punishable by twenty years' imprisonment. *Compare* former AS 17.10.010 and 17.10.200 with AS 11.71.020 and 12.55.125(c). Moreover, a presumptive term of five years now applies to first offenders; previously, no presumptive sentence applied. Thus, it seems clear that adherence to existing case law will not suffice to resolve the sentencing issue in this case; the appropriateness of McReynolds' sentence must be evaluated within the framework of the currently applicable sentencing provisions.[2]

Judge Katz found two distinct mitigating factors to be applicable. The judge initially found that the offense was mitigated because the amount of heroin distributed by McReynolds was small. AS 12.55.-155(d)(14). The sentencing record establishes that McReynolds sold a "quarter T" —approximately one-quarter of a teaspoon of heroin—which had a total weight of less than one-quarter of a gram. *Compare Solitaire v. State*, 709 P.2d 1334 (Alaska App.1985) (holding that heroin sales of one-

**2.** *But see Pears v. State*, 698 P.2d 1198, 1202–03 (Alaska 1985) (*reversing in part Pears v. State*, 672 P.2d 903 (Alaska App.1983), and concluding that statutory revisions redefining as second-degree murder certain conduct formerly punishable only as manslaughter did not demonstrate legislative intent to increase typical sentences for first offenders).

quarter and one-half gram involved small quantities). The total price of the drug was only $100.

Judge Katz also found that McReynolds' conduct was among the least serious within the definition of the offense. AS 12.55.-155(d)(9). This finding was not simply based on the small quantity of heroin furnished by McReynolds, but rather on the fact that McReynolds' conduct involved a casual sale that was instigated by McReynolds' friend, Raygor.

 In our view, there is particularly strong support in the sentencing record for this mitigating factor. Despite our finding that Raygor's role in the transaction did not amount to entrapment and did not involve a significant degree of duress or coercion, it is nevertheless undisputed that Raygor and McReynolds were well acquainted, that McReynolds considered Raygor to be a friend, and that the transaction involved a minute quantity of heroin and occurred at Raygor's behest. There is, furthermore, nothing to indicate that McReynolds' conduct was commercial in nature— i.e., that McReynolds received any money from the transaction or that his decision to deliver heroin was motivated by a desire for personal profit or gain. Finally, the sentencing record is devoid of any solid evidence to indicate that McReynolds' sale was part of any ongoing pattern of similar misconduct; there is no realistic basis here for concluding that McReynolds' decision to provide drugs was anything other than an isolated incident.[3]

In short, McReynolds was convicted of an isolated, non-commercial sale of a minute quantity of drugs; the transaction was instigated by McReynolds' friend, and McReynolds apparently derived no personal profit therefrom. Without assuming the presence of extraordinary circumstances that would have justified referral to the three-judge panel, it is difficult to envision a less serious transaction involving heroin than the one involved in this case, or one that would depart further from the type of conduct that is characteristic of this type of offense.[4]

 Viewing McReynolds' conduct in this light, we believe that the sentencing court was mistaken in concluding that the need to deter others and to reaffirm socie-

---

**3.** At the sentencing hearing, the state pointed out that McReynolds apparently had a significant problem with heroin addiction and that, according to the presentence report, he had not held steady employment for any significant period of time during the years preceding his conviction. From this, the state asked the court to infer that McReynolds must have been involved in illegal activities to support his drug habit. In response, defense counsel asserted that McReynolds had often worked at part-time or temporary jobs for which he was not paid regular wages and that he had supported himself and his minor daughter. The state did not respond to these assertions.

In our view, the mere fact that McReynolds has not earned steady wages cannot suffice to support the inference that he has been involved in ongoing criminal activity. In *Donlun v. State,* 550 P.2d 369, 371 & n. 5 (Alaska 1976), a similar issue was presented. There, the sentencing court relied on Donlun's unemployment and "negative lifestyle" as a basis for assuming that Donlun had been involved in illegal activity other than that for which he had been convicted. On appeal, the supreme court disapproved of the sentencing court's assumption, holding:

Nothing in either the record of Donlun's trial, the presentence report, or the sentencing proceedings warrants the inference that the sen-

tencing court drew from the fact of Donlun's unemployment. We are not implying that the fact of whether or not one is industrious may not be considered in the sentencing process, but mere unemployment is not a basis for an assumption that other crimes have been committed by a defendant in the absence of affirmative evidence. One can have a socially unproductive lifestyle and yet not take from society in an illegal or criminal manner. In past decisions we have condemned reliance by the sentencing court on such impermissible considerations.

*Id.* at 371 (footnote and citations omitted).

We note that, in the present case, Judge Katz apparently rejected the state's request to infer ongoing criminal activity from the fact of McReynolds' unemployment. The judge made no finding that McReynolds had been involved in ongoing drug sales, and nothing in the sentencing remarks indicates reliance by the court on McReynolds' employment record.

**4.** In *Lausterer v. State,* 693 P.2d 887, 891 (Alaska App.1985), for example, we observed that a characteristic case of sale or possession for sale of controlled substances involves an offender who is engaged in ongoing transactions on a commercial basis. *See also Rivas v. State,* 706 P.2d 1202 (Alaska App.1985).

tal norms required imposition of a sentence in excess of the minimum adjusted term authorized by the legislature. It is particularly significant that, although McReynolds suffered from a long-standing drug abuse problem, Judge Katz never implied that McReynolds would be a poor risk for rehabilitation, and the judge did not base her decision to impose a sentence exceeding the minimum term on the need for McReynolds' rehabilitation. The judge recommended that McReynolds be classified to a residential drug rehabilitation program during the last eighteen months of his imprisonment. There is no indication in the sentencing record that a sentence in excess of two and one-half years would be necessary to allow for McReynolds' rehabilitation or to deter McReynolds personally from engaging in future misconduct. Thus, while McReynolds' substance abuse problem and the concern which it engenders certainly provide a basis for imposition of a suspended term over and above the authorized two and one-half year minimum, the sentencing goals of rehabilitation and personal deterrence cannot independently justify imposition of additional, unsuspended imprisonment.

The inappropriateness of a sentence exceeding two and one-half years of imprisonment is further underscored by a comparison of McReynolds' sentence with sentences approved for the next lower class of drug offenders—those convicted of selling cocaine. Sale of cocaine is a class B felony, for which the maximum term of imprisonment is ten years. *See* AS 11.71.030 and 12.55.125(d). Offenses involving cocaine sales have arisen far more frequently than cases involving sales of heroin, and, consequently, we have had occasion in our decisions to delineate fairly precise sentencing guidelines for cocaine offenders.

Specifically, many of our decisions dealing with first offenders have involved sales that were commercial in nature—i.e., for profit—and that were engaged in as part of an ongoing pattern of drug sales. For sentencing purposes, we have tended to group first offenders in such cases into either of two fairly broad categories. For ongoing, commercial sales of relatively small amounts of cocaine—sales that could be likened to "retail" transactions—we have consistently approved sentences up to, but not exceeding two years of unsuspended time to serve. *See, e.g., Harvey v. State,* 691 P.2d 1061 (Alaska App.1984); *Gallagher v. State,* 651 P.2d 1185 (Alaska App.1982); *Resek v. State,* 644 P.2d 877 (Alaska App.1982); *Rosa v. State,* 633 P.2d 1027 (Alaska App.1981); and *Dana v. State,* 623 P.2d 348 (Alaska App.1981). *See also Yates v. State,* 681 P.2d 1362 (Alaska App.1984); *Bush v. State,* 678 P.2d 423 (Alaska App.1984); and *Hawley v. State,* 648 P.2d 1035 (Alaska App.1982).

For sales involving larger amounts—sales akin to "wholesale" transactions—we have indicated that an unsuspended term of up to four years may be appropriate, but that a four-year term should be exceeded only in truly exceptional cases. *See, e.g., Rivas v. State,* 706 P.2d 1202 (Alaska App. 1985); *Brandenburg v. State,* 705 P.2d 1331 (Alaska App.1985); *Marin v. State,* 699 P.2d 886 (Alaska App.1985); *Stuart v. State,* 698 P.2d 1218 (Alaska App.1985); and *Lausterer v. State,* 693 P.2d 887 (Alaska App.1985). *See also Blakesley v. State,* 715 P.2d 269 (Alaska App.1986). *Cf. Resek v. State,* 705 P.2d 463 (Alaska App.1985).

Thus, a two and one-half year term for McReynolds would approximate the highest sentence we have typically approved for first offenders engaging in ongoing, commercial sales of "retail" quantities of cocaine. In our view, comparison with this group of offenders reasonably reflects the seriousness of McReynolds' misconduct, even when full allowance is made for the higher classification given by the legislature to transactions involving heroin. First, an adjusted presumptive term of two and one-half years of unsuspended imprisonment is a significantly greater penalty than a non-presumptive sentence of two years, not only in the additional six months incarceration but also in that the adjusted presumptive sentence precludes eligibility for early release on parole. Second, and more significantly, McReynolds' conduct, which involved an isolated, non-commercial sale of a minute quantity of heroin, is being

compared with retail level sales of cocaine committed by offenders who are involved in illicit drug transactions on an ongoing basis.

In contrast, the sentence of five years with one year suspended that McReynolds received below approximates the upper limits of the term that this court has held to be appropriate for first offenders convicted of ongoing, commercial sales involving large quantities of cocaine. In fact, because McReynolds' four-year unsuspended sentence precludes eligibility for parole, the sentence imposed below effectively treats McReynolds' conduct as being even more serious than the conduct involved in such cases. Even giving due consideration to the inherently more serious nature of heroin offenses, as reflected in the classification of McReynolds' case as a class A felony, we believe it unrealistic to liken the seriousness of McReynolds' crime to the conduct of offenders who engage in large-scale, wholesale level trafficking of literally tens of thousands of dollars in cocaine.

 In reaching this conclusion, we do not mean to suggest that a two and one-half year sentence would be appropriate in any but the most unusual cases.[5] In our view, however, for the reasons we have stated, McReynolds' offense qualifies as such a case. We hold that, in light of the mitigating factors established in the record, a sentence of five years with one year suspended is clearly mistaken. On remand, McReynolds should be sentenced to an adjusted presumptive term that does not exceed five years with two and one-half years suspended.

The conviction is AFFIRMED. The sentence is VACATED, and this case is RE-

MANDED for resentencing as directed herein.

---

**5.** The mere fact that the defendant has established that his conduct was among the least serious within the definition of the offense is not *per se* sufficient to justify a maximum decrease in the presumptive term. Rather, the trial court must evaluate the significance of the mitigating factor based on the specific facts of each case and in light of the sentencing criteria established in *State v. Chaney*, 477 P.2d 441 (Alaska 1970). *See Linn v. State*, 658 P.2d 150 (Alaska App.1983). In prior cases involving least serious conduct we have not hesitated to approve relatively minor adjustments to the applicable presumptive term, where such adjustments have been justified by the totality of the circumstances. *See State v. Richards*, 720 P.2d 47, 51 (Alaska App.1986) (Singleton, J., concurring); *Nell v. State*, 642 P.2d 1361, 1371 (Alaska App.1982). Nothing in our holding today is inconsistent with these cases.