Raymond H. LAUSTERER, Appellant,

v.

STATE of Alaska, Appellee.

No. A–104.

Court of Appeals of Alaska.

Jan. 25, 1985.

Linda R. MacLean, Drathman & Weidner, W. Grant Callow, II, Asst. Public Defender, Dana Fabe, Public Defender, Anchorage, and Raymond H. Lausterer, in pro. per., for appellant.

Leonard M. Linton, Jr., Asst. Dist. Atty., Victor C. Krumm, Dist. Atty., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Raymond H. Lausterer was convicted on his plea of guilty to one count of possession of cocaine with intent to deliver, in violation of AS 11.71.030(a)(1) (misconduct involving a controlled substance in the third degree). Superior Court Judge Victor D. Carlson sentenced Lausterer to six years'

imprisonment with two years suspended. In addition, Judge Carlson imposed a fine of $20,000 and ordered Lausterer to pay restitution for the amount expended by the Anchorage Metropolitan Drug Unit. Lausterer appeals, contending that this sentence is excessive. We affirm.

## THE OFFENSE

On February 23, 1983, an undercover officer of the Metropolitan Drug Unit made arrangements to buy a pound of cocaine for $40,000. The first two installments were delivered to an Anchorage hotel room on the evening of February 24, 1983, with a $5,000 payment made upon the delivery of each installment. Surveillance of the individuals who made the initial delivery led police to believe that the drugs originated from a house occupied by Raymond Lausterer. The individuals involved in the actual delivery of the cocaine were arrested immediately after the second installment of cocaine was delivered. Shortly afterward, police obtained a search warrant for Lausterer's house.

Officers arriving to execute the warrant were forced to break down Lausterer's front door and found it barred from the inside by a specially installed 2 × 4. Upon entering the house, the officers saw Lausterer leaving the bathroom, going toward one of the bedrooms. The water in the bathtub was running and the toilet had just been flushed. In the bathroom the police found twelve empty plastic bags with cocaine residue on them. A search of the open safe in the bedroom yielded twelve plastic packages containing a total of nine and three-eighths ounces of cocaine. Currency in the amount of $20,435 was also found; the currency included $5,000 in pre-recorded bills that had been used to pay for the initial installment of cocaine. Officers also found and seized scales, a special suitcase, plastic bags, transaction records apparently relating to prior cocaine sales, and six firearms. Lausterer was arrested and charged with delivery of cocaine and possession of cocaine with intent to deliver.

The charge of delivery was dismissed upon Lausterer's conviction of possession.

## THE OFFENDER

Lausterer was forty-one years old when he committed this offense and had no prior record of criminal conviction as an adult. He was fined $50 as a juvenile in 1960 for being a minor in possession of alcohol; in 1978 he was convicted of a traffic infraction.

Lausterer comes from a stable family background and grew up in the Anchorage area. From 1961 to 1966 he served in the United States Navy, receiving an honorable discharge. After leaving the service Lausterer maintained a commendable record of employment. He is skilled and licensed in aircraft mechanics. The sentencing record contains numerous letters of reference from Lausterer's acquaintances and former employers. The letters are consistent in their praise of Lausterer's good character and his skills as a worker.

In a letter submitted to Judge Carlson prior to sentencing, Lausterer stated that he began using cocaine three years before his arrest. According to Lausterer, he first sold small amounts of the drug about six months before the offense, after having been laid off at work. Lausterer claimed that he usually sold only small amounts of cocaine. He stated that he had never previously transacted a sale as large as the one contemplated in this case. There is nothing in the record to contradict Lausterer's claims.

It appears from the presentence report that Lausterer suffers from no significant psychological problems or emotional disorders. He is not addicted to or dependent on cocaine or any other controlled substance, and he apparently does not abuse alcohol. Since the entry of his guilty plea Lausterer has readily acknowledged his guilt and appears to sincerely regret his participation in the offense. The author of Lausterer's presentence report concluded, in part:

> Mr. Lausterer has made excellent strides in terms of rehabilitating himself.

He has commented on the difference he has noticed since discontinuing marijuana and cocaine use. He has been receptive to the information and therapy made available to him at T.A.S.C. [Treatment Alternatives to Street Crimes]. I feel that he is quite sincere in his motivation not to become involved with drugs again.

There is evidence in the record that, as a result of the arrest and conviction in this case, Lausterer has incurred severe financial losses.

## THE SENTENCING HEARING

Lausterer's conviction constituted a class B felony, punishable by a maximum term of ten years' imprisonment. AS 11.71.-030(c); AS 12.55.125(d). Presumptive terms of four and six years are prescribed for second and subsequent felony offenders. Since Lausterer had no prior felony convictions, he was not subject to a presumptive term.

In imposing a sentence of six years with two years suspended, Judge Carlson accepted the evidence of Lausterer's rehabilitation but was concerned with the seriousness of the offense, emphasizing the need to deter other potential offenders and to reaffirm societal norms:

Having dealt with many similar type cases and knowing the public's concern about the use of narcotics in our society, I think that the reaffirmation of societal norms is among the most important *Chaney* [*State v. Chaney*, 477 P.2d 441 (Alaska 1970) ] criteria to be addressed in this case. In addition, the deterrence of others. It appears as if the defendant is deterred and he's well on his way to rehabilitation. This is the type of crime where planning goes into it, weighing the costs versus the benefits is involved and therefore it's not something which is done on the spur of the moment, and

clearly this one was not done on the spur of the moment.... It's apparent that Mr. Lausterer has flaunted the rules of society, he was dealing in a large quantity of narcotics, he was in the business of selling narcotics on a relatively—or in a large scale manner. I think this is a very serious case....

## DISCUSSION

On appeal Lausterer contends that a sentence of six years with two years suspended for a first offender violates the rule this court enunciated in *Austin v. State*, 627 P.2d 657 (Alaska App.1981). In *Austin* we held:

Normally a first offender should receive a more favorable sentence than the presumptive sentence for a second offender. It is clear this rule should be violated only in an exceptional case.

*Id.* at 657–58.

We believe Judge Carlson properly concluded that Lausterer's offense was a serious one because of the large amount of cocaine involved. Lausterer was convicted pursuant to AS 11.71.030,[1] under which a person who sells or possesses for sale any amount of cocaine—regardless of how large or small—is subjected to conviction and punishment for a class B felony. In *Waters v. State*, 483 P.2d 199 (Alaska 1971), a case decided prior to adoption of the current drug code, the Alaska Supreme Court suggested that drug offenders be grouped for sentencing purposes into four categories:

1. Smuggling or sale of large quantities of narcotics or possession of large quantities for sale.

2. Smuggling or sale of small quantities of narcotics, or possession of small quantities for sale.

---

1. AS 11.71.030(a)(1) provides:

*Misconduct involving a controlled substance in the third degree.* (a) Except as authorized in AS 17.30 or AS 17.35, a person commits the crime of misconduct involving a controlled substance in the third degree if the person

(1) manufactures or delivers any amount of a schedule IIA or IIIA controlled substance or possesses any amount of a schedule IIA or IIIA controlled substance with intent to manufacture or deliver....

Under AS 11.71.150(c), cocaine is classified as a schedule IIA controlled substance.

3. Possession of narcotics without intent to sell.

4. Marijuana offenses.

*Id.* at 201 (grouping recommended by The President's Commission on Law Enforcement and Administration of Justice, The Challenge of Crime in a Free Society 513 (Avon 1968)). The Alaska Revised Criminal Code has taken an approach consistent with *Waters* by specifically making the quantity of drugs involved in a controlled substance offense a relevant sentencing criterion for presumptive sentencing purposes. Thus, AS 12.55.155(c)(25) provides that a statutory presumptive sentence may be adjusted upward when "the defendant is convicted of an offense specified in AS 11.71 [any offense involving controlled substances] and the offense involved large quantities of a controlled substance."

■ Neither the supreme court's decision in *Waters* nor the aggravating factor specified in AS 12.55.155(c)(25) attempts to define what might constitute a large quantity of drugs. Obviously no single definition would be appropriate for all substances in all contexts. Our consideration of the case law and our experience in reviewing appeals in drug cases suggests that, insofar as cocaine is concerned, it would normally be unrealistic to consider sale or possession for sale of less than an ounce to involve a large quantity. Offenders dealing with cocaine in such quantities may be likened to retailers. *See, e.g., Waters*, 483 P.2d at 201. On the other hand, it would ordinarily be appropriate to regard eight ounces or more of cocaine as a large quantity—one that is indicative of commercial activity at the wholesale level. Finally, cases involving an ounce or more but less than eight ounces of cocaine comprise a fairly large middle ground and may be characterized as falling somewhere between clearly retail and clearly wholesale.[2] Determining whether a given quantity within this middle range should more properly be deemed large or small will necessarily hinge on the totality of the circumstances of the individual case, including the amount of money involved in the transaction, the purity of the cocaine, the manner and context in which the cocaine is possessed or sold, and the precise nature and extent of the defendant's participation in the offense.

■ In the present case the record unmistakably establishes Lausterer's participation in an offense involving a large quantity of cocaine. When Lausterer was arrested he was in actual possession of twelve plastic bags containing more than half a pound of cocaine; he had apparently just disposed of the cocaine in twelve additional bags. Furthermore, two deliveries of cocaine from Lausterer's stockpile had already been made to the police; each involving at least two ounces. These deliveries were part of a transaction that was to involve the sale of a full pound of cocaine for $40,000. Finally, other circumstances in the case, such as the manner in which Lausterer's door was barred, the use of a safe, the presence of business records and a large amount of cash, and the ready availability of a large number of firearms, strongly support the conclusion that Lausterer was involved in a well-planned, large-scale commercial transaction.

■ We recognize that, while the quantity of cocaine in this case may be deemed relatively large, transactions involving substantially larger quantities may not be uncommon. In this respect, it might be inaccurate to depict Lausterer as a "titan of the narcotics industry." *Waters v. State*, 483 P.2d at 201. In light of Lausterer's lack of prior criminal convictions, his good history of employment, and his favorable prospects for rehabilitation, we do not believe that the quantity of cocaine in this case is so exceptional that imposition of a sentence substantially exceeding the second offender presumptive term of four

**2.** For example, in *Rosa v. State,* 633 P.2d 1027 (Alaska App.1981), Rosa had been in possession of slightly less than four ounces of cocaine. In affirming Rosa's sentence we noted that he best fit in group one ("large quantities") of the four categories defined in *Waters* and characterized the cocaine he possessed as a "relatively large" amount. *Rosa,* 633 P.2d at 1033.

years would be justified under *Austin v. State,* 627 P.2d 657 (Alaska App.1981), at least in the absence of any additional aggravating circumstances. It should be recalled that the amount of drugs involved in an offense is only one of several factors relevant to sentencing in drug cases. *See Waters v. State,* 483 P.2d at 201. We nevertheless believe that the amount of cocaine involved here renders this case sufficiently aggravated to permit, without violating the principles of *Austin,* the imposition of an unsuspended term of four years, an amount equal to the second offense presumptive sentence for a class B felony. In addition, we conclude that the case is sufficiently serious to justify two years of suspended imprisonment, so that the suspended and unsuspended portions of the sentence total six years, a period equal to the presumptive sentence for a third or subsequent felony offender.

Having found that Lausterer's sentence does not violate our *Austin* standard, we must separately consider whether, under all of the circumstances of the case, the sentence was excessive. Lausterer argues that, in imposing sentence, Judge Carlson unduly emphasized deterrence and reaffirmation of societal norms, while in effect ignoring the goal of rehabilitation. *See State v. Chaney,* 477 P.2d 441, 443–44 (Alaska 1970).

 However, the sentencing record makes it clear that Judge Carlson was aware of rehabilitation as a sentencing goal. It is well established that in individual cases the sentencing court bears the

primary responsibility for establishing the weight and priority to be given to each of the applicable sentencing goals; while the goal of rehabilitation must be considered in each case, it need not be given priority. *See Gest v. State,* 619 P.2d 724, 725 n. 4 (Alaska 1980); *Asitonia v. State,* 508 P.2d 1023, 1026 (Alaska 1973). Even in the case of a first offender who has an exemplary background, the nature and seriousness of the offense may justify emphasizing the sentencing goals of deterrence and reaffirmation of societal norms. *See, e.g., Clemans v. State,* 680 P.2d 1179, 1189–90 (Alaska App.1984).

 As we have noted, Lausterer's sentence of six years with two years suspended is a severe one for a first offender. However, when the total amount of cocaine involved in the case is taken into account, Lausterer's sentence does not appear to be disproportionate to sentences approved in other cases involving cocaine sale or possession for sale. *See, e.g., Bush v. State,* 678 P.2d 423, 426 n. 1 (Alaska App.1984). Having independently reviewed the totality of the sentencing record, we cannot say that Judge Carlson was clearly mistaken in imposing Lausterer's sentence.[3] *McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974).

The sentence is AFFIRMED.

**3.** After initiating this sentence appeal, Lausterer filed with the superior court a motion for reduction of his sentence pursuant to Alaska Criminal Rule 35(a). In support of this motion Lausterer presented evidence of the excellent progress toward rehabilitation he had made since being incarcerated. He also presented evidence of the severe financial effects of his arrest and conviction. Lausterer requested that his term of imprisonment be reduced by two years and that his $20,000 fine be reduced. Judge Carlson denied these requests after a hearing. Lausterer thereafter supplemented this appeal with the claim that Judge Carlson erred in denying his Rule 35(a) motion.

The arguments raised by Lausterer with respect to the Rule 35(a) motion are quite similar to arguments that he first raised at sentencing. At the time of the original sentencing Judge Carlson was aware that Lausterer's prospects for rehabilitation were excellent and that, as a result of the criminal prosecution in this case, Lausterer had been subjected to severe economic losses. Accordingly, Lausterer's Rule 35(a) motion presented the superior court with little new information to warrant reduction of the sentence originally imposed. Having reviewed the record of proceedings below, we conclude that Judge Carlson did not abuse his discretion in denying Lausterer's motion for reduction of his sentence.