Robert RIVAS, Jr., Appellant,

v.

STATE of Alaska, Appellee.

No. A–671.

Court of Appeals of Alaska.

Oct. 17, 1985.

71.040(a)(3)(A), and five counts of misconduct involving a controlled substance in the third degree—possession of cocaine for sale—a class B felony, AS 11.71.030(a)(1). He received a sentence of two years on Count I and four years on Counts II through VI. The sentences on Counts I, II, and III were concurrent. The sentences on Counts IV, V, and VI were consecutive to those imposed for Counts I, II, and III, and concurrent with one another. The sentences imposed for Counts IV, V, and VI were suspended and the defendant was placed on probation for five years. Thus, Rivas was sentenced to a total of eight years with four years suspended. He appeals, contending that the sentence is excessive. We agree and remand for resentencing not to exceed six years with two years suspended. In reaching this conclusion, we follow *Stuart v. State,* 698 P.2d 1218 (Alaska App.1985), and *Lausterer v. State,* 693 P.2d 887 (Alaska App.1985).

## THE OFFENDER

At the time of this offense, Rivas was thirty-one years old. He completed the twelfth grade of school, is married, and has been steadily employed, most recently as a custodian for the State of Alaska at Anchorage International Airport. He served in the United States Air Force and received an honorable discharge. He has a minor criminal record consisting of one misdemeanor conviction for a driving offense.

## THE OFFENSE

Rivas was apprehended in connection with an extensive investigation of a drug ring headed by Alexander Resek, Sr. In the course of the investigation, Mark Flechsing, an informant for the state troopers, penetrated the Resek organization and served as a courier distributing cocaine to Resek's various customers. From July 7 until September 10, 1983, Flechsing made five deliveries of cocaine to Rivas. On September 10, 1983, a search warrant was obtained and Rivas' dwelling was searched. During the execution of the warrant, officers found a ziplock baggie with white-pow-

Susan Orlansky, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellant.

Leonard M. Linton, Jr., Asst. Dist. Atty., Victor C. Krumm, Dist. Atty., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Robert Rivas pled no contest to and was convicted of one count of misconduct involving a controlled substance in the fourth degree—cocaine—a class C felony, AS 11.-

der residue, several baggies with powder residue, a quantity of bags containing three grams, and earring containers with quantities of powder in them. A ziplock bag with 3.1 grams of powder was analyzed and found to contain cocaine. The police estimated that, aside from the 3.1 grams in the ziplock bag, the search of Rivas' residence produced a half-ounce of cocaine. The search of Rivas' residence resulted in one of the charges of misconduct involving a controlled substance in the third degree. The single count of misconduct involving a controlled substance in the fourth degree and four counts of misconduct involving a controlled substance in the third degree arose from various deliveries Flechsing made to Rivas. Rivas concedes that the total of these deliveries constituted approximately ten ounces of cocaine.

## THE SENTENCING

At the sentencing hearing, Judge Carlson carefully considered the five *Chaney* criteria: rehabilitation, protection of the public, deterrence of others, deterrence of self, and affirmation of community norms. *State v. Chaney*, 477 P.2d 441 (Alaska 1970). *See also* AS 12.55.005. He recognized that Rivas was ambitious, energetic, and industrious, and that he was an excellent candidate for rehabilitation. Judge Carlson also recognized the positive significance of Rivas' marriage and his noncriminal employment history. However, Judge Carlson stressed that Rivas had engaged in the commercial exploitation of cocaine for profit and had been lured by the great profits that were available. Nevertheless, Judge Carlson rated the deterrence of Rivas himself as a low sentencing priority because he felt that Rivas had been deterred by getting caught. Consequently, he felt that Rivas' sentencing should emphasize deterrence of others and affirmation of community norms. He therefore concluded that a substantial period of imprisonment was necessary in order to counteract the lure of substantial profits.

## DISCUSSION

Resolution of this case is controlled by our recent opinions in *Stuart v. State*, 698 P.2d 1218 (Alaska App.1985) and *Lausterer v. State*, 693 P.2d 887 (Alaska App.1985).

Lausterer was charged with one count of possession of cocaine and one count of possession of cocaine with intent to deliver. The charge of delivery was dismissed upon Lausterer's conviction of possession. Lausterer's offense grew out of two deliveries of cocaine to an undercover police officer totaling four ounces. *Id.* at 891. The deliveries were made as part of an agreement to supply a pound of cocaine for $40,000. A search of Lausterer's residence yielded twelve plastic packages containing a total of nine and three-eighths ounces of cocaine, and currency in the amount of $20,435. The currency included $5,000 in pre-recorded bills that had been used to pay for the initial installment of cocaine. Officers also found and seized scales, a special suitcase, plastic bags, transaction records apparently relating to prior cocaine sales, and six firearms. *Id.* at 889. Lausterer was sentenced to six years' imprisonment with two years suspended, a $20,000 fine and restitution. We affirmed.

Stuart was convicted of two counts of delivery of cocaine to the state's undercover agent and one count of possession of cocaine with an intent to deliver. Each of Stuart's convictions constituted a class B felony. AS 11.71.030(c). Execution of a search warrant for Stuart's house led to the discovery of about $67,000 in cash, fifteen ounces of cocaine of an estimated value of $45,000 and weighing, refining, and packaging paraphernalia. *Stuart*, 698 P.2d at 1223. Stuart received nonpresumptive sentences of four years on each count. The sentences were made consecutive to each other for a total sentence of twelve years. Six years of the sentence were suspended on the condition that Stuart serve a five-year probationary period. *Id.*

In light of *Lausterer*, we held that Stuart's sentence was excessive. Like Lausterer, Stuart's lack of prior criminal convictions, his good history of employ-

ment, and his favorable prospects for rehabilitation militated against a sentence substantially exceeding the second offender presumptive term of four years. *Stuart,* 698 P.2d at 1224. However, we held that Lausterer's six-year sentence with two years suspended was warranted because of his substantial involvement in the commercial sale of cocaine, indicated by the large quantity[1] of it seized. *Lausterer,* 693 P.2d at 892. Similarly, although Stuart possessed a large quantity of cocaine at the time of his arrest, we limited his sentence on remand to consecutive sentences totaling no more than six years with two years suspended, or three separate sentences of six years with two years suspended to be served concurrently. *Stuart,* 698 P.2d at 1224. In the context of *Stuart,* the multiple charges served only to validate the conclusion that the person making the sales was involved in commercial distribution of cocaine and to establish the scope of the illegal enterprise. *Id.*

 In contrast to Lausterer, who possessed over nine ounces of cocaine, and Stuart, who possessed approximately fifteen ounces of cocaine, Rivas never possessed over three ounces at any one time. However, the amount of cocaine involved in the six incidents resulting in Rivas' convictions, totaled approximately ten ounces. The consistent pattern of receiving deliveries establishes that Rivas was more than a casual participant in the commercial sale of cocaine. Based on the total amount of cocaine involved in Rivas' drug transactions, we have little difficulty in characterizing his activity as dealing in "large quantities." Nevertheless, like Lausterer and Stuart, Rivas is not a "titan of the narcotics industry." *See Waters v. State,* 483 P.2d 199, 201 (Alaska 1971). We therefore conclude that our decision in *Lausterer* should govern here as well:

We nevertheless believe that the amount of cocaine involved here renders this case sufficiently aggravated to permit, without violating the principles of *Austin* [*v. State,* 627 P.2d 657 (Alaska App.1981),] the imposition of an unsuspended term of four years, an amount equal to the second offense presumptive sentence for a class B felony. In addition, we conclude that the case is sufficiently serious to justify two years of suspended imprisonment, so that the suspended and unsuspended portions of the sentence total six years, a period equal to the presumptive sentence for a third or subsequent felony offender.

693 P.2d at 892.

 Like Stuart, and unlike Lausterer, Rivas was convicted of multiple offenses. Like Stuart, he received consecutive sentences. Under the circumstances, we believe that the presumptive sentences established by the revised criminal code for Rivas' most serious offense should constitute a ceiling on Rivas' sentence and therefore, that Rivas' total sentence should not exceed six years with two years suspended. *See also Marin v. State,* 699 P.2d 886 (Alaska App.1985) (reducing drug courier's

---

1. In *Lausterer,* we interpreted the phrase "large quantity" of cocaine as follows:

Our consideration of the case law and our experience in reviewing appeals in drug cases suggests that, insofar as cocaine is concerned, it would normally be unrealistic to consider sale or possession for sale of less than an ounce to involve a large quantity. Offenders dealing with cocaine in such quantities may be likened to retailers. *See, e.g., Waters* [*v. State*], 483 P.2d [199] at 201 [Alaska (1971)]. On the other hand, it would ordinarily be appropriate to regard eight ounces or more of cocaine as a large quantity—one that is indicative of commercial activity at the wholesale level. Finally, cases involving an ounce or more but less than eight ounces of cocaine comprise a fairly large middle ground and may be characterized as falling somewhere between clearly retail and clearly wholesale [footnote omitted]. Determining whether a given quantity within this middle range should more properly be deemed large or small will necessarily hinge on the totality of the circumstances of the individual case, including the amount of money involved in the transaction, the purity of the cocaine, the manner and context in which the cocaine is possessed or sold, and the precise nature and extent of the defendant's participation in the offense.
*Lausterer v. State,* 693 P.2d at 891 (Alaska App. 1985).

sentence for two counts from twelve years with four suspended to six years with two years suspended); *cf. Resek v. State*, 705 P.2d 463 (Alaska App.1985) (approving sentence of eight years with three suspended for one substantially involved in a major drug organization).

The six-year ceiling on Rivas' sentence is also appropriate because of the factual similarity of this case to *Stuart* and *Lausterer*. Like Stuart and Lausterer, Rivas has a favorable criminal record, a good employment history, and is a good prospect for rehabilitation. We therefore remand for resentencing with instructions that Rivas' total sentence including all consecutive increments should not exceed six years with two years suspended.

This case is REMANDED to the superior court for further proceedings consistent with this opinion.