**Charles D. SMITH, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–2443.**

Court of Appeals of Alaska.

Jan. 20, 1989.

---

Fleur Roberts, Law Offices of Dick L. Madson, Fairbanks, for appellant.

Richard J. Ray, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

## OPINION

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

BRYNER, Chief Judge.

Charles D. Smith was convicted after entering pleas of no contest to one count of misconduct involving a controlled substance in the third degree (sale of cocaine), a class B felony, AS 11.71.030, and one count of theft in the second degree, a class C felony, AS 11.46.130. Superior Court Judge Richard D. Savell sentenced Smith to a term of four years for the controlled substance offense and imposed a consecutive term of two years with one year suspended for the theft offense. Smith appeals, contending that the sentence is excessive. We reverse.

In April of 1987, the Alaska State Troopers in Fairbanks received information that Smith was involved in the sale of controlled substances to military personnel. An undercover officer contacted Smith and, on May 18, 1987, purchased 3.5 grams (approximately one-eighth ounce) of cocaine from him for $600 or $700.

On May 28, 1987, the same informant arranged another purchase of cocaine from Smith. The informant met with Smith and a friend of Smith's, Eugene Eckardt. The informant gave Smith $750. Smith, in turn, gave the money to Eckardt, who left. Smith told the informant that Eckardt would return with the cocaine. In fact, Smith had arranged for Eckardt to abscond with the money. When Eckardt did not return, Smith went to look for him. He returned and told the informant that Eckardt had absconded. Smith promised to repay the informant, and the informant left. A short time later, Smith met with Eckardt, who gave Smith the money that the informant had paid for cocaine. Smith and Eckardt were placed under arrest shortly thereafter.

Smith was charged with misconduct involving a controlled substance in the third degree for his May 18 sale of cocaine. He was charged with theft in the second degree for taking the $750 that had been given to him for the second cocaine sale. Smith subsequently entered no contest pleas to the charges.

When he committed these offenses, Smith was twenty years old. Although Smith had no prior convictions as an adult, he had a long-standing problem with abuse of cocaine and had at one time spent approximately three months in a residential treatment program for substance abuse. While Smith claimed not to use cocaine at the time of sentencing, there is at least some information in the presentence report to contradict this claim.

Despite Smith's lack of a prior record as an adult, he has a fairly extensive record of involvement with the juvenile justice system. At age sixteen, in 1983, Smith was charged with shoplifting. The case was informally handled. Later the same year, Smith was adjudicated a delinquent and placed on probation for criminal trespass. In 1984, at age seventeen, Smith's probation was revoked and a deferred institutional order was entered as a result of Smith's attempt to cash a forged check in the amount of $400. Six months later, Smith was again charged with violating the conditions of his probation, this time for consuming cocaine and delivering cocaine to a minor. The charge of delivery to a minor was dismissed, but Smith's probation was revoked for his consumption of cocaine. Smith was institutionalized as a delinquent on August 17, 1984. He was released on December 2, 1985, approximately one and one-half months before his nineteenth birthday.

At the time of his sentencing hearing in the present case, Smith had charges pending against him for misdemeanor theft and driving without a license. Smith also had a fairly extensive record of minor traffic violations.

Additional evidence that was presented at Smith's sentencing hearing indicates that Smith has been involved in misconduct other than that reflected in his formal criminal and juvenile records. Police reports submitted by the prosecution show that, in the spring and summer of 1986, when Smith was nineteen years old, he regularly sold cocaine to approximately eight to ten individuals in the Fairbanks area. Smith obtained his cocaine through sources in California. At one point, he involved his sixteen-year-old girlfriend, K.H., in these transactions by having K.H. wire $2,400 to California, for which she received a package containing approximately two ounces of cocaine. K.H.'s mother discovered the drugs and turned them in to the police. No formal action was taken against Smith, because K.H. would not cooperate with the police. According to the police report, on at least one prior occasion, Smith was also involved in stealing approximately $1,000 from another person in connection with a drug sale.

In imposing Smith's sentence, Judge Savell placed heavy reliance on Smith's juvenile history and on the evidence of his prior involvement in cocaine trafficking with K.H. The judge characterized Smith as a "budding professional criminal." Rejecting Smith's explanation of the current offenses—which minimized Smith's role and tended to shift blame to the undercover informant—Judge Savell concluded that Smith's prospects for rehabilitation were relatively poor. For the offense of selling cocaine, the judge sentenced Smith to four years in prison, the equivalent of the presumptive term for a second felony offender. For the theft offense, the judge imposed a term of two years with one year suspended. Because the theft involved a separate intent and violated different societal interests than the cocaine sale offense, the judge imposed the theft sentence consecutively, for a composite term of six years with one year suspended.

In appealing his sentence, Smith initially challenges the sentencing court's reliance on the information dealing with Smith's prior misconduct that was contained in the presentence report and in various police reports. However, the challenged information was adequately veri-

fied, *see, e.g., Nukapigak v. State*, 562 P.2d 697, 701 (Alaska 1977), *aff'd on rehearing*, 576 P.2d 982 (1978), and Smith did not deny it. Absent an express, testimonial denial or, at the very least, a specific request for confrontation and cross-examination, the court was entitled to rely on this information. *See Agwiak v. State*, 750 P.2d 846, 849 (Alaska App.1988); *Pickens v. State*, 675 P.2d 665, 671 (Alaska App.1984).

■ We next consider Smith's claim that the sentence he received is excessive. Although the two crimes for which Smith was convicted were different in character and violated separate societal interests, they were closely related in time and circumstance, involved the same victim, and both arose in the context of Smith's illegal drug sales. Under these circumstances, the appropriate frame of reference for our analysis is the totality of Smith's sentence, rather than the length of the individual sentences that he received. *See Stuart v. State*, 698 P.2d 1218, 1224 (Alaska App. 1985); *see also Waters v. State*, 483 P.2d 199, 201 (Alaska 1971).

Smith's composite sentence of six years with one year suspended exceeds by one year of unsuspended incarceration the four-year presumptive term for a second felony offender convicted of a class B felony. In *Austin v. State*, 627 P.2d 657, 657–58 (Alaska App.1981), we held that a first felony offender should ordinarily receive a sentence more favorable than the presumptive term for a second felony offender convicted of a like class of offense. Only in exceptional cases, where significant statutory aggravating factors are established or where there are extraordinary circumstances that would warrant referral to the three-judge sentencing panel, should the *Austin* rule be violated. *See Tate v. State*, 711 P.2d 536 (Alaska App.1985).

■ The presence of multiple offenses in Smith's case is a valid consideration in determining whether the *Austin* limits should be exceeded, but does not obviate the need for compliance with the *Austin* standard. Particularly when, as here, related offenses arise from a continuing course of criminal activity, the presumptive term for the most serious offense remains the significant benchmark, and the *Austin* rule requires an express finding of exceptional circumstances to justify the imposition of an unsuspended sentence that equals or exceeds that presumptive term. *See Stuart*, 698 P.2d at 1223–24. *See also Farmer v. State*, 746 P.2d 1300 (Alaska App.1987); *Lacquement v. State*, 644 P.2d 856 (Alaska App.1982).

In the present case, then, we must determine whether the composite term of six years with one year suspended was justified under *Austin*. If Smith were a typical first offender, he would have been entitled to a sentence significantly lower than the four-year presumptive term for a second felony offender. An analysis of our prior sentencing decisions indicates that, for typical first-offense cocaine sales, sentences should not exceed two years of unsuspended incarceration. *See, e.g., Blakesley v. State*, 715 P.2d 269 (Alaska App.1986); *Harvey v. State*, 691 P.2d 1061 (Alaska App.1984); *Dana v. State*, 623 P.2d 348, 356 (Alaska App.1981).

■ The sentencing court's decision that Smith's case was an aggravated one was based on Smith's record of delinquent behavior,[1] the evidence of his persistent involvement in selling cocaine, and his commission of a theft offense—a factor which, according to the sentencing court, added an additional dimension to Smith's criminal activities. In our view, these considerations, particularly Smith's willingness to involve

---

1. Although Smith's record of delinquency is not insignificant, we note that the sentencing court appears to have been mistaken in evaluating its seriousness. The record indicates that the court believed that Smith had been found to be a delinquent for distributing cocaine to a minor. The presentence report, however, shows that, while Smith was charged with distributing cocaine to a minor and consuming cocaine, the distributing charge was eventually dismissed. Additionally, the sentencing court characterized Smith's attempt to pass a $400 forged check as conduct that would have qualified as a felony had it been committed by an adult. Under AS 11.46.505, however, passing a forged check would amount to a class C felony; an attempt to commit that offense would be a class A misdemeanor. *See* AS 11.31.100(d)(4).

his sixteen-year-old girlfriend in his drug-related activities, are sufficient to justify an unsuspended term equivalent to the presumptive term for a second felony offender.

On balance, however, we do not believe that a composite sentence of more than four years of unsuspended incarceration can be justified. In several recent cases involving first felony offenders who were convicted of engaging in ongoing, commercial distribution of large quantities of cocaine, this court has upheld sentences of up to six years with two years suspended but has declined to approve lengthier terms. *See, e.g., Staats v. State,* 717 P.2d 413, 422 (Alaska App.1986); *Rivas v. State,* 706 P.2d 1202, 1205–06 (Alaska App.1985); *Marin v. State,* 699 P.2d 886, 888 (Alaska App.1985); *Stuart v. State,* 698 P.2d 1218, 1223–24 (Alaska App.1985); *Lausterer v. State,* 693 P.2d 887, 891–92 (Alaska App. 1985).

All of these cases involved relatively mature offenders whose sales placed them squarely within the most serious of the four classes of drug offenders established by the Alaska Supreme Court in *Waters v. State,* 483 P.2d at 201. In contrast, Smith appears to have been involved in a level of cocaine sales that falls decidedly closer to the second *Waters* category: sale or possession for sale of small quantities. *See Lausterer,* 693 P.2d at 890–91.

In terms of the amounts of cocaine sold, the amounts of money involved, and the relative sophistication of the illegal enterprise, Smith's activities do not begin to match those engaged in by Staats, Rivas, Marin, Stuart, or Lausterer. Smith's juvenile record, his willingness to involve his sixteen-year-old girlfriend, and his commission of thefts in connection with his drug dealings are sufficient to make his case comparable in seriousness to the more mature and sophisticated offenders involved in *Staats, Rivas, Marin, Stuart,* and *Lausterer.* These factors do not, however, set Smith apart as a more serious offender.

Our review of prior sentence appeals in comparable cases indicates that sentences of five years or more for distribution of cocaine have been reserved for offenders whose convictions were for selling large quantities and who either had prior felony convictions or had otherwise demonstrated an unusual degree of persistence as adult felony offenders. *See, e.g., Montoya v. State,* 729 P.2d 892 (Alaska App.1986); *Brandenburg v. State,* 705 P.2d 1331 (Alaska App.1985); *Resek v. State,* 705 P.2d 463 (Alaska App.1985); *Bush v. State,* 678 P.2d 423 (Alaska App.1984); *Hawley v. State,* 648 P.2d 1035 (Alaska App.1982); *Rosa v. State,* 627 P.2d 658 (Alaska App. 1981); *Strachan v. State,* 615 P.2d 611 (Alaska 1980); *Hawley v. State,* 614 P.2d 1349 (Alaska 1980); *Johnson v. State,* 577 P.2d 230 (Alaska 1978). We are aware of no cases approving a sentence of more than four years to serve for a youthful first offender convicted of selling relatively small quantities of cocaine.

Accordingly, having independently reviewed the totality of the sentencing record, we conclude that the sentencing court was clearly mistaken in imposing consecutive terms totaling more than four years of unsuspended incarceration. *McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974). The sentences imposed below are VACATED, and this case is REMANDED to the superior court, with directions to impose a composite sentence totaling no more than six years with two years suspended.