**Dena MAJOR, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 1078.**

Court of Appeals of Alaska.

Sept. 14, 1990.

John M. Murtagh, Anchorage, for appellant.

Erin B. Marston, Asst. Dist. Atty., Dwayne W. McConnell, Dist. Atty., Anchorage, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON,* JJ.

## OPINION

BRYNER, Chief Judge.

Dena Major was convicted after pleading no contest to five counts of misconduct involving a controlled substance in the third degree (sale of cocaine), a class B felony punishable by a maximum of ten years and by presumptive terms of four and six years for second and subsequent felony offenders. Superior Court Judge Mark C. Rowland sentenced Major, a first felony offender, to partially consecutive sentences totaling eight years with four years suspended. Major appeals, contending that the sentence is excessive. We reverse.

## THE OFFENSE

Over a period of approximately a month in the spring of 1989, Major sold cocaine to an undercover informant on nine occasions. All of the sales were for either $\frac{1}{16}$ or $\frac{1}{8}$ ounce packages, with prices ranging from $100 for $\frac{1}{16}$ ounce to $300 for an $\frac{1}{8}$ ounce. Major used couriers, whom she would contact by pager and telephone, to deliver the drugs. As a result of these transactions, Major was originally charged with nine counts of selling cocaine and one count of possessing. Upon her no contest plea to five counts of sale, the state dismissed the remaining charges.

* This case was submitted for decision prior to Judge Singleton's resignation.

## THE OFFENDER

At the time of sentencing, Major was a thirty-five-year-old first felony offender. She had been married and divorced once and had a son in late 1975 or early 1976. Major was convicted of a misdemeanor for possessing marijuana in 1981. She was fined $500 for the offense. Prior to 1986, despite developing a problem with substance abuse—primarily marijuana—Major managed to maintain a relatively consistent record of employment and was able to adequately care for her son. In 1985 Major sought treatment for her substance abuse problem, and the treatment appears to have been successful for a short period of time.

In 1986, Major began using drugs again and decided to sell drugs to obtain money for cosmetic surgery that she wanted to have performed. She became romantically involved with a man who sold and used cocaine; in a short time she became addicted herself.

From 1986 through the time of her arrest in 1989, Major sold cocaine as her primary source of income and to support her own addiction, which at the time of her arrest in 1989 cost approximately $500 a day. Major used several acquaintances as couriers, and she would supply them with cocaine in return for their deliveries. Although it appears that Major sold cocaine consistently from 1986 through 1989, there is nothing in the record to establish that she ever sold quantities significantly greater than the ⅛ to ¹⁄₁₆ ounce transactions for which she was convicted.

At her sentencing hearing, Major showed considerable remorse for her misconduct. While incarcerated following arrest, she had pursued courses in drug rehabilitation counseling, and she was interested in obtaining more intensive therapy after sentencing.

According to the presentence report, Major appeared to be intelligent and well-meaning, but she suffered from low self-esteem and tended to involve herself in relationships with abusive men. She also seemed to be prone to substance addiction. Psychological information included in the presentence report further indicated that Major suffers from a personality disorder involving narcissism and mixed personality disorder.

## SENTENCING HEARING

At the sentencing hearing, Major's counsel urged the court to impose a short sentence geared primarily toward rehabilitation. Counsel pointed out that the offense was Major's first felony conviction, that she was genuinely committed to rehabilitation, and that she had pursued her career as a drug dealer to support her own addiction.

In contrast, the prosecution urged the court to impose a sentence exceeding the four-year *Austin* limit, *see Austin v. State*, 627 P.2d 657, 657–58 (Alaska App.1981), arguing that Major's case was aggravated because of the length of time during which she had been selling drugs, the fact that she did so for commercial gain and as her primary means of support, and the fact that she employed several other people in her illegal enterprise. The state contended that four aggravating factors could apply to Major's case if she were subject to presumptive sentencing: first, that Major was the leader of a group of three or more persons participating in the offense (AS 12.55.155(c)(3)); second, that her involvement was designed to obtain substantial monetary gain while involving only a slight risk of detection (AS 12.55.155(c)(16)); third, that her offense was one of a continuing series of offenses committed in furtherance of illegal business activities from which she derived a major portion of her income (AS 12.55.155(c)(17)); and, fourth, that Major's delivery of cocaine was part of an ongoing commercial enterprise (AS 12.-55.155(c)(23)). Based on these aggravating factors, the state requested the court to impose an aggregate term in the range of six years with two years suspended.

In imposing sentence, Judge Rowland did not make any specific findings as to potentially applicable aggravating or mitigating factors. The judge stated that, based on the presentence report, he was convinced

that Major was heavily involved in "the drug trade over a long period of time." He found that, despite her addiction, Major had been "a willing participant in the trade and a recipient of the economic advantages [that] it offered for a long period of time...."

Noting that Major was not a youthful offender and had been unsuccessful in past efforts at treatment for her substance abuse problem, Judge Rowland stated that he could not say that rehabilitation was likely in her case. Thus, although the judge believed that the possibility of rehabilitation should be taken into account, he concluded that reaffirmation of societal norms and deterrence of Major and others should be emphasized in imposing her sentence.

Judge Rowland sentenced Major to four-year terms on each of her five counts. He suspended the terms as to two of the five counts, making them concurrent to each other but consecutive to the unsuspended four-year terms for the other three counts. The three unsuspended four-year terms were, in turn, made concurrent to each other. Major's aggregate sentence was thus eight years with four years suspended.

## DISCUSSION

On appeal, Major argues that a sentence exceeding or even approaching the four-year presumptive term for a second felony offender is excessive in her case. Relying on her first-offender status, the relatively small quantities of cocaine that she sold, and the fact that her sales were motivated by the need to support her own addiction, Major contends that the composite term of eight years with four years suspended that she received is disproportionately high. In opposition, the state, as it did below, argues that Major's case is an aggravated first offense and therefore warrants a sentence exceeding the four-year presumptive term for a second felony offender.

Sentencing is an individualized process that requires case-by-case consideration of the background of the offender and the seriousness of the conduct involved in the offense. We turn first to the evidence relating to Major's background. Despite her status as a first felony offender, Major has a 1981 misdemeanor conviction involving marijuana. While Major was punished by only a minimal fine for that offense, her conviction apparently involved circumstances indicative of commercial dealing. At the time of sentencing Major had a severe addiction to cocaine. Moreover, she has a background of substance abuse that she has attempted to address without lasting success. As Judge Rowland correctly noted, she is no longer a youthful offender. Her treatment picture is further complicated by the fact that she has been diagnosed as suffering from a personality disorder.

These factors indicate that, despite Major's seemingly genuine remorse, her current willingness to work toward rehabilitation, and various other favorable aspects of her background, her overall prospects for rehabilitation are somewhat less favorable than those of a typical first offender convicted of a comparable offense. Under the circumstances, the record establishes that Major's background is moderately worse than that of a typical first offender. This certainly supports Judge Rowland's skepticism concerning Major's rehabilitation.

■ Nevertheless, Major's spotty background falls short of being so serious or extraordinary as to justify an exceptionally high first offense sentence. If a sentence exceeding the *Austin* four-year limit is to be justified at all in this case, it can only be justified by the seriousness of the conduct that led to Major's conviction. We must thus consider the seriousness of her conduct.

In this respect, the Alaska Supreme Court set out the definitive framework for evaluating the seriousness of drug-related offenses in *Waters v. State*, 483 P.2d 199 (Alaska 1971). There, the court established four categories of drug offenses:

1. Smuggling or sale of large quantities of narcotics or possession of large quantities for sale.

2. Smuggling or sale of small quantities of narcotics, or possession of small quantities for sale.

3. Possession of narcotics without intent to sell.

4. Marijuana offenses.

*Id.* at 201.

This court has had numerous occasions to apply the *Waters* analysis in the context of the Alaska Revised Criminal Code's presumptive sentencing system. For cases falling within *Waters'* second category—those dealing with sales or possession for sale of smaller, "retail level" quantities of cocaine—we have routinely approved first-offense sentences of up to two years of unsuspended time when there has been some indication of ongoing, commercial activity. *See, e.g., Bush v. State,* 678 P.2d 423 (Alaska App.1984); *Dana v. State,* 623 P.2d 348 (Alaska App.1981).

Perhaps of more immediate relevance to Major's situation is a line of cases decided by this court dealing with first-offense transactions involving larger amounts of cocaine, which bordered on the first category of *Waters* offenses. The seminal case in this line is *Lausterer v. State,* 693 P.2d 887 (Alaska App.1985). Lausterer was convicted of possessing more than one-half pound of cocaine with intent to sell. He acknowledged engaging in a series of commercial cocaine sales over the six months prior to arrest. Noting that cocaine transactions of eight ounces bordered on the "wholesale" level of dealing encompassed within the first *Waters* category of seriousness, this court found that an exceptionally high first offense sentence was justified in Lausterer's case. We approved a total term of six years with two years suspended.

Since deciding *Lausterer,* we have regularly followed its precedent in considering first offenders convicted of conduct bordering on first category *Waters* offenses—that is, quasi "wholesale" transactions involving half a pound or more of cocaine. We have readily approved composite sentences equalling Lausterer's six years with two years suspended but have reversed sentences exceeding the *Lausterer* limit.

*See, e.g., Lewis v. State,* 769 P.2d 450 (Alaska App.1989); *Staats v. State,* 717 P.2d 413 (Alaska App.1986); *Rivas v. State,* 706 P.2d 1202 (Alaska App.1985); *Marin v. State,* 699 P.2d 886 (Alaska App. 1985); *Stuart v. State,* 698 P.2d 1218 (Alaska App.1985). These cases indicate the appropriateness of a benchmark term of no more than six years with two years suspended for first offenders engaged in borderline wholesale cocaine transactions. A common feature of these cases has been the defendants' extensive participation in a highly lucrative, commercial pattern of cocaine trafficking—one involving large quantities of cocaine and large amounts of money. Many of the offenders were convicted of multiple acts, reflecting a continuing course of conduct over a substantial period of time—a feature that is, in fact, typical of cases involving persons convicted of commercial-grade drug trafficking.

In sharp contrast to this group of offenders whose transactions involve quantities of one-half pound or more of cocaine, Major was convicted for a series of drug sales involving ⅛ and 1/16 of an ounce. These sales clearly rank well within the second *Waters* category of drug offenses: "retail level" sales of small quantities. Although Major's conduct fell decidedly in the second *Waters* level of offenses, she received a composite sentence that actually exceeded the *Lausterer* benchmark of six years with two years suspended.

In imposing Major's sentence, Judge Rowland did not expressly find any applicable aggravating factors or extraordinary circumstances. The judge likewise did not explain precisely why he believed that Major deserved an even more severe sentence than that typically appropriated for a significantly higher level of commercial cocaine dealers.

In concluding that Major's case was aggravated, Judge Rowland plainly relied on her extensive involvement in commercial cocaine sales over a lengthy period of time. As we have seen, however, extensive and ongoing involvement in commercial trafficking has also been a hallmark of the offenders involved in the large scale sales

that we have considered in the *Lausterer* line of cases. Thus, Judge Rowland's apparent basis for imposing a substantial sentence does not adequately distinguish Major's case from the *Lausterer* group or explain why a more severe sentence was warranted for Major's pattern of smaller, retail-level drug dealing.

Major's case unquestionably involves a course of conduct lasting for upwards of three years—a period of time significantly longer than any of the cases falling within the *Lausterer* line. However, it is difficult to see how this factor would adequately set Major apart as a more serious offender. In the month of sales to an undercover officer for which Major was convicted here, the total quantity of cocaine that she sold, and the money that she derived therefrom, did not even begin to approach the amount of drugs and profit typically involved in a single transaction in the *Lausterer* line of offenses.

In our view, a balanced picture of Major and the seriousness of her conduct emerges from the evaluation in her presentence report:

> Appearing for non-presumptive sentencing for five counts of misconduct involving a controlled substance in the third degree is thirty-five-year-old Dena Major. Although this offense is not the most serious of its type, the depth of the defendant's participation in commercial drugs sales is of concern. Also, a 1981 conviction appears to indicate she was involved in a commercial drug sales enterprise at that time. She seems to have been the center of activity for several other persons who sometimes acted as a courier, after she had received the purchase order via her pager.

> Ms. Major's problems, however, can be traced to her teenage years when she states she was physically abused by her stepfather, ran away from home, and was under juvenile probation supervision. She has participated in a series of physi-cally abusive relationships with adult males, probably caused by a feeling of low self-esteem. This feeling is also apparent in her statements about being motivated to sell illegal drugs commercially in order to finance major and expensive cosmetic surgery on her body to improve her physical appearance.... The most negative factor in the defendant's situation is her extreme, long-term dependence on sizable amounts of cocaine. Until this habit can be successfully addressed, she likely will be impossible to monitor in field supervision.

> Ms. Major is physically attractive, vivacious, and seems to have above average intelligence, this being displayed in the verified 4.0 grade point average achieved at the University of Alaska in 1978. The defendant appears employable in several different fields, if she chooses to work in one of them. Also, she seems to have been totally candid with the probation officer about the extent of her engagement in commercial drug sales, a stance infrequently encountered in drug dealers.

> Ms. Major requires rehabilitation, and certainly, the community deserves protection from her leadership in commercial sales of illegal drugs. Also, she and others should be deterred from similar activities in the future.

All in all, Major's unusually lengthy period of involvement in drug trafficking and her somewhat worse than average prospects for rehabilitation would justify treating her as a relatively aggravated first felony offender and would warrant a sentence approaching the *Lausterer* benchmark,[1] despite the smaller, retail level of trafficking that she engaged in. *See Smith v. State,* 745 P.2d 1375, 1378 (Alaska App.1987) (reviewing sentences for distribution of cocaine). We are convinced, however, that these factors do not justify placing Major in the same or more serious

1. Our decisions find support in Alaska Supreme Court sentence appeals dealing with first offenders convicted of retail-level cocaine sales prior to adoption of the presumptive sentencing system. *See, e.g., Kelly v. State,* 622 P.2d 432 (Alaska 1981); *LeDuff v. State,* 618 P.2d 557 (Alaska 1980); *Strachan v. State,* 615 P.2d 611 (Alaska 1980); *Elliott v. State,* 590 P.2d 881 (Alaska 1979).

category than the borderline wholesale traffickers involved in the *Lausterer* line of cases. We conclude that the composite term of eight years with four years suspended that Major received is clearly mistaken. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974). Accordingly, we reverse Major's sentence and remand for resentencing. On remand, the sentencing court should impose a composite term not exceeding six years with three years suspended.[2]

The sentence is REVERSED.

**2.** In urging this court to find that an even lower sentence should have been imposed, Major relies prominently on her addiction to cocaine, arguing that it should set her case apart from those of non-addicted offenders, whose involvement in cocaine trafficking is ostensibly motivated solely by greed. There is some support in the case law for the proposition that drug addiction may be viewed as a mitigating factor when an offender is convicted of selling drugs. *See, e.g., Huff v. State*, 568 P.2d 1014, 1017 (Alaska 1977) (describing the defendant as a heroin addict who acted as a middleman and was "not the non-addicted seller of narcotics in substantial quantities who makes a considerable profit out of this illegal enterprise"). On the specific facts of the present case, however, we are not persuaded by Major's argument. Judge Rowland's sentencing remarks indicate his belief that Major had been involved in a level of trafficking beyond that merely necessary to support her addiction. This finding is supported by the record. More significantly, the record indicates that Major made a conscious decision to begin selling drugs commercially—albeit she initially planned to sell marijuana—even before she became addicted. Given these circumstances, Judge Rowland did not err in declining to attach substantial significance to Major's addiction as a mitigating factor.